DICKSTEIN SHAPIRO MORIN & OSHINSKY LLP
Keith D. Nowak (KN 0230)
1177 Avenue of the Americas
New York, New York 10036
(212) 835-1400
(212) 997-9880 (Fax)

Attorneys for Plaintiff,
TBC Consoles, Inc.



## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TBC CONSOLES, INC, a New York Corp., | **JUDGE WOOD** |
| Plaintiff, | Civil Action No. **05 CV 2756** |
| -against- | |
| FORECAST CONSOLES, INC., a New York Corp., | **COMPLAINT FOR A DECLARATORY JUDGMENT AND DEMAND FOR JURY TRIAL** |
| Defendant. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff TBC Consoles, Inc., by its attorneys Dickstein Shapiro Morin & Oshinsky LLP, for its complaint for a declaratory judgment against defendant Forecast Consoles, Inc., avers as follows:

## THE PARTIES

1.     Plaintiff TBC Consoles, Inc. ("TBC") is a corporation organized under the laws of the State of New York, with its principal place of business located at 170 Rodeo Drive, Edgewood, New York 11717.

2.    Upon information and belief, defendant Forecast Consoles, Inc. ("Forecast") is a corporation organized under the laws of the State of New York, with its principal place of business located at 367c Bay Shore Road, Deer Park, New York 11729.

## NATURE OF THE CASE

3.    This is an action seeking a declaratory judgment that Plaintiff is not infringing United State Patent No. 6,857,712 issued to William G. Haberman on February 22, 2005 (the " '712 Patent"). A copy of the '712 Patent is attached hereto as Exhibit A. Plaintiff also seeks a declaration that the '712 Patent is invalid, void, and/or unenforceable.

## JURISDICTION AND VENUE

4.    This is a claim arising under the Patent Laws of the United States, Title 35, United States Code, for a declaratory judgment under Title 28, United States Code §§ 2201 and 2202. The jurisdiction of this Court is founded upon Title 28, United States Code §§ 1331, 1338(a), 2201 and 2202 and upon Title 35, United States Code §§ 271.

5.    This Court has personal jurisdiction over the defendant because Forecast, *inter alia,* resides in New York, transacts business in New York, contracts to supply goods within New York, engages in a persistent course of conduct in New York, and expects, or reasonably should expect, its acts to have legal consequences in New York.

6.    Venue within this District is proper under Title 28, United States Code §§ 1391(c) and 1400(b).

## BACKGROUND

7.      Plaintiff TBC is in the business of designing, manufacturing, and selling technical furniture used in supporting professional video production equipment and operations, under various trade names including "*intelli*TRAC."

8.      Upon information and belief, defendant Forecast is in the business of manufacturing technical furniture, under various trade names including "MASTERail."

9.      Forecast is listed as the assignee of the '712 Patent entitled "Multi-Media Workstation Having a Master Rail System," covering a multi-media workstation having rail extrusions.  The '712 Patent was issued to William G. Haberman, the president of Forecast, on February 22, 2005.

10.      On March 1, 2005, Forecast sent TBC a warning letter and demanded that "in view of the … patent" TBC refrain from and immediately stop offering for sale its *intelli*TRAC console system.  A copy of the March 1, 2005 letter is attached hereto as Exhibit B.  Forecast warned TBC that Forecast would take whatever steps are deemed necessary to defend its patent rights, exposing TBC to patent infringement suit by Forecast.

11.      Prior to the issuance of the '712 Patent and by letter dated April 20, 2004, Forecast had also warned TBC that Forecast intended to enforce its patent rights by pursuing a permanent injunction, as well as any legally available monetary damages,

once the patent issues.  A copy of the April 20, 2004 letter is attached hereto as Exhibit

C.

12.    Under these circumstances, TBC has an objectively reasonable

apprehension that Forecast will institute litigation for infringement of the '712 Patent if

TBC continues to manufacture, market, and/or sell its products including the

*intelli*TRAC console system.

13.    There is a substantial and continuing justiciable controversy between TBC

and Forecast as to Forecast's right to threaten or maintain suit for infringement of the

'712 Patent, as to the validity, scope and enforceability thereof, and as to whether TBC

infringes or will infringe any valid and enforceable claim of the '712 Patent by

proceeding with the sale of an *intelli*TRAC console sytem.

## FIRST CAUSE OF ACTION
(Declaration that the '712 Patent Is Invalid and Void)

14.    TBC repeats and incorporates herein, the averments of paragraphs 1 to 13

inclusively.

15.    TBC alleges, upon information and belief, that the '712 Patent is invalid

and void under a number of provisions of Title 35, United States Code, including 35

U.S.C. §§ 102, 103, and 112, and/or for at least one or more of the following reasons:

a.    The patentee did not invent the subject matter patented, nor did he

make any invention or discovery, either novel, original, or otherwise,

within the meaning of United States Code, Title 35.

b.    The alleged invention was made by another in this country before the patentee's alleged invention, and such other person had not abandoned, suppressed, or concealed it.

c.    The '712 Patent does not particularly point out and distinctly claim the part, improvement, method steps, or combination which the patentee claims as his invention, as required by Title 35, United States Code.

d.    The claims, and each of them are not directed to patentable combinations, but are directed to mere aggregations of parts or steps, means, or elements which were matters of common knowledge in the art to which the '712 Patent relates before the alleged invention and/or more than one year prior to the date of the application for the '712 Patent.

e.    In light of the prior art at the time the alleged invention was made, the subject matter as claimed in the '712 Patent would have been obvious to one of ordinary skill in the art to which the alleged invention relates and does not constitute a patentable invention.

f.    The alleged invention or discovery was disclosed in a United States patent to another, the application for which was filed before the alleged invention by the patentee of the patent in suit.

g.    More than one year prior to the filing of the original application which matured into the patent in suit, the alleged invention was patented or described in printed publications in this or in foreign countries, or was in public use or on sale in this country.

h.    Before the alleged invention or discovery by the patentee, the alleged invention was known or used by others than the alleged inventor and was on sale in this country and/or was patented or described in printed publications in this or in foreign countries.

i.    The claims of the patent in the suit are functional, indefinite, and are broader than the alleged invention as set forth in the specification of the patent in suit.

## SECOND CAUSE OF ACTION
(Declaration that the '712 Patent Is Unenforceable)

16.    TBC repeats and incorporates herein, the averments of paragraphs 1 to 15, inclusively.

17.    TBC alleges, upon information and belief, that defendant engaged in inequitable conduct in the procurement of the '712 Patent, rendering the '712 Patent unenforceable.

18.    By letter dated May 7, 2004, TBC sent a number of product documents to Mr. Charles R. Hoffmann of Hoffmann & Baron, LLP, defendant's patent counsel of the

'712 Patent. A copy of the May 7, 2004 letter is attached hereto as Exhibit D. The

product documents include brochures and show console systems and workstations in

existence before the earliest priority date of the '712 Patent.

19.     The U.S. Patent Office would have considered the product documents in

determining whether the claims of the '712 Patent satisfied the requirements for

patentability, and such product documents are material and relevant to such a

determination.

20.     TBC alleges, upon information and belief, that those product documents

were never submitted to the U.S. Patent Office during the time that the '712 Patent was

pending by either defendant or its patent counsel. Because defendant and/or its patent

counsel had knowledge of but failed to submit the relevant prior art references to the

U.S. Patent Office, defendant engaged in inequitable conduct in the procurement of the

'712 Patent.

### THIRD CAUSE OF ACTION
(Declaration that Plaintiff
Does Not Infringe the '712 Patent)

21.     TBC repeats and incorporates herein, the averments of paragraphs 1 to 20

inclusively.

22.     TBC alleges that, by reason of the proceedings in the U.S. Patent Office

during the prosecution of the application which resulted in the '712 Patent as shown by

the file wrapper thereof, defendant is estopped to claim for said patent a construction

that would cause said patent to cover or include any apparatus or device or product or method manufactured, used, or sold by TBC.

23.    TBC's products including the *intelli*TRAC console system do not have one or more claim limitations recited in the '712 Patent claims.

24.    Accordingly, TBC has not infringed, or contributed to or induced infringement of, the '712 Patent, nor will TBC infringe, or contribute to or induce infringement of, the '712 Patent by manufacturing, using, selling or offering for sale its products including the *intelli*TRAC console system.

## PRAYER FOR RELIEF

**WHEREAS**, Plaintiff prays for relief as follows:

A.    a declaration that TBC does not infringe any claim of the '712 Patent;

B.    a declaration that the '712 Patent, and each and every claim thereof, is invalid, void and/or unenforceable;

C.    a declaration that Forecast, its officers, employees, agents and all persons in active concert or participation with them be permanently enjoined and restrained from asserting that TBC's business activities constitute an infringement directly, contributorily, or by inducement, of the '712 Patent;

D.    a declaration that Plaintiff have and recover attorneys' fees, together with costs of this suit; and

E.    a declaration for such other and further relief as the Court may deem just

and equitable.

Dated:  <u>March 10, 2005</u>

Keith D. Nowak (KN 0230)
Dickstein Shapiro Morin & Oshinsky LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 835-1400
(212) 997-9880 (Fax)
Attorneys for Plaintiff,
TBC Consoles, Inc.

# EXHIBIT A

US006857712B1

(12) **United States Patent**     (10) Patent No.:     **US 6,857,712 B1**

Haberman     (45) Date of Patent:     **Feb. 22, 2005**

(54) **MULTI-MEDIA WORKSTATION HAVING A MASTER RAIL SYSTEM**

(75) Inventor:  **William G. Haberman**, Glen Head, NY (US)

(73) Assignee:  **Forecast Consoles, Inc.**, Deer Park, NY (US)

( * ) Notice:  Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/407,436**

(22) Filed:  **Apr. 4, 2003**

**Related U.S. Application Data**

(60) Provisional application No. 60/370,070, filed on Apr. 4, 2002.

(51) Int. Cl.$^7$ .......................... **A47B 47/00**; A47F 10/00

(52) U.S. Cl. ............................... **312/223.3**; 108/50.01; 108/143; 108/102; 52/36.1; 52/36.4; 312/195

(58) Field of Search ................................. 52/36.1, 36.4, 52/36.5; 312/223.3, 194, 195, 265.4, 265.1; 108/50.01, 50.02, 137, 143, 102

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,382,642 | A | * | 5/1983 | Burdick | ...................... 312/194 |
| 4,838,177 | A | | 6/1989 | Vander Park | |

| | | | | | |
|---|---|---|---|---|---|
| 4,974,913 | A | * | 12/1990 | Vogt et al. | ................... 312/195 |
| 5,337,525 | A | * | 8/1994 | Zaccai et al. | ................... 52/35 |
| 5,428,928 | A | * | 7/1995 | Hellwig et al. | ............... 52/239 |
| 5,974,985 | A | * | 11/1999 | Flototto et al. | ........ 108/157.18 |
| 6,042,203 | A | * | 3/2000 | Bogucki | ............ 312/223.3 |
| 6,152,048 | A | | 11/2000 | Vander Park | |
| 6,189,268 | B1 | * | 2/2001 | Carr et al. | ................... 52/36.1 |
| 6,279,761 | B1 | | 8/2001 | Niewiadomski et al. | |
| 6,283,043 | B1 | | 9/2001 | Stern et al. | |
| 6,302,035 | B1 | * | 10/2001 | Frenkler et al. | ............ 108/102 |
| 6,619,765 | B2 | * | 9/2003 | Visser et al. | ............... 312/194 |
| 2003/0020381 | A1 | * | 1/2003 | Cattaneo | ................... 312/223.6 |
| 2003/0071546 | A1 | * | 4/2003 | Gosling et al. | ............ 312/223.3 |
| 2004/0035332 | A1 | * | 2/2004 | Lin | ............................ 108/50.01 |

* cited by examiner

*Primary Examiner*—Brian E. Glessner

(74) *Attorney, Agent, or Firm*—Hoffmann & Baron, LLP

(57)     **ABSTRACT**

A multi-media workstation having a master rail system for permitting horizontal adjustment of the various components of the workstation. The workstation generally includes a console having a work surface and a master rail system for supporting various audiovisual equipment. The master rail system includes a rail extrusion connecting at least two frames and having a longitudinal slot formed in at least one of its surfaces. The various components of the workstation each include a finger engaged in the longitudinal slot of the rail extrusion, wherein the component is able to be horizontally translated along a length of the rail extrusion.

**15 Claims, 9 Drawing Sheets**





FIG. 1



FIG. 2





FIG. 3



FIG. 4



FIG. 5



FIG. 6



FIG. 8



FIG. 9

FIG. 7



FIG. 15



FIG. 16



US 6,857,712 B1

**1**

# MULTI-MEDIA WORKSTATION HAVING A MASTER RAIL SYSTEM

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of U.S. Provisional Application No. 60/370,070, filed on Apr. 4, 2002.

## FIELD OF THE INVENTION

The present invention relates generally to multi-media workstations for supporting various electronic equipment, and more particularly to a modular workstation console having a master rail system that provides for full horizontal adjustment of the various components of the workstation.

## BACKGROUND OF THE INVENTION

Workstations for mounting audio-visual, electrical, communication and computer equipment are well known and are available from different manufacturers. It is also known to construct office workstations in a modular fashion that permits a wide variety of furniture groupings or arrangements. However, if numerous electrical components are required together in a relatively small workstation space, it becomes essential to easily arrange such components in a compact manner whereby the equipment is comfortably and conveniently accessible to the user or users. Efficient routing of the electrical wiring and cables so as not to detract from the appearance of the workstation also becomes an issue. Wiring and cables should be located away from the floor areas where persons might trip on them and should be easily accessible for service personnel.

Some particular environments that require increasingly complicated and sophisticated workstations include television studios, radio stations, security centers, air traffic control centers and financial and brokerage institutions where users typically need access to numerous television monitors, computer displays, data processors and telecommunications equipment arranged in a side-by-side manner. In such environments, workstations are typically custom built and installed by the manufacturer based on the user's particular equipment requirements. As such, the workstation arrangement for supporting the various electronic components is usually permanently fixed. If it later becomes necessary to expand the workstation or rearrange the electronic components, the workstation must be rebuilt or replaced. The result is that the workstation may be put out of use during the modification or expansion. Thus, such known workstations are not optimally suited for use in a dynamic work environment, where workspaces are ideally capable of rapid configuration and reconfiguration by the workers themselves in a highly efficient manner.

Accordingly, it would be desirable to provide a flexible, modular workstation that permits the user to easily adjust the positions of the various components of the workstation as desired. Additionally, it would be desirable to provide such a workstation that is adapted to allow mounting of additional equipment or components and that can be easily connected to other workstations.

## SUMMARY OF THE INVENTION

The present invention is a multi-media workstation having a master rail system for permitting horizontal adjustment of the various components of the workstation. The workstation generally includes a console having a work surface and a master rail system for supporting various audiovisual equipment.

In a preferred embodiment, the multi-media workstation includes at least two vertical frames having an upper mount-

**2**

ing surface thereon, a first rail extrusion mounted to the mounting surface of the vertical frames and connecting the frames, a second rail extrusion mounted to the mounting surface of the vertical frames and connecting the frames, a desktop unit mounted to the first rail extrusion and a console box, for supporting a piece of audiovisual equipment, mounted to the second rail extrusion. The first rail extrusion has an upper surface, a lateral surface and a longitudinal slot formed in at least one of the upper and lateral surfaces. The second rail extrusion has an upper surface and a longitudinal slot formed in the upper surface. The longitudinal slots are preferably T-shaped. The second rail extrusion is mounted to the mounting surface of the vertical frames such that the upper surface of the second rail extrusion is disposed at a downward angle with respect to the upper surface of the first rail extrusion. The desktop unit has a finger engaged in the longitudinal slot of the first rail extrusion, wherein the desktop unit is able to be horizontally translated along a length of the first rail extrusion. Similarly, the console box has a finger engaged in the longitudinal slot of the second rail extrusion, wherein the console box is able to be horizontally translated along a length of the second extrusion.

Preferably, the workstation further includes a bracket assembly connected between the first and second rail extrusions. The bracket assembly includes a flat panel extending between the first and second rail extrusions and at least one bracket for supporting the flat panel. The flat panel encloses a cavity between the first rail extrusion, the second rail extrusion and the vertical frames for containing electrical wiring for the workstation therein. Additionally, the flat panel includes at least one grommet opening for accessing the electrical wiring contained within the cavity.

The desktop unit preferably includes a work surface and at least two desktop brackets for supporting the work surface. The desktop brackets each include a finger engaged in the longitudinal slot of the first rail extrusion.

Furthermore, the first rail extrusion preferably includes a second longitudinal slot formed in one of the upper and lateral surfaces and the workstation further preferably includes a support stand for supporting a second piece of workstation equipment. The support stand has a finger engaged in the second longitudinal slot of the first rail extrusion, wherein the support stand is able to be horizontally translated along a length of the first rail extrusion.

Thus, the console includes a plurality of rigid steel frames, which are spaced at various intervals along the length of the console. The master rail system is integrated into the frames of the console for providing maximum horizontal adjustability of the various components of the workstation. The first and second rail extrusions can include a plurality of T-shaped slots formed therein along the entire length of the extrusion. The flat panel spoil board is essentially a flat plate connecting the first and second rail extrusions and extending along the length of the console. The spoil board encloses a cavity to contain electrical wiring for the various components of the workstation along the length of the console.

In an alternative embodiment, the first rail extrusion, the second rail extrusion and the spoil board can be integrated into a single extrusion mounted to the top of the console. Thus, in this embodiment, the workstation generally includes at least two vertical frames having an upper mounting surface thereon, a rail extrusion mounted to the mounting surface of the vertical frames and connecting the frames, a desktop unit mounted to the rail extrusion and a console box, for supporting a piece of audiovisual equipment, mounted to the rail extrusion. The rail extrusion includes a first portion having an upper surface, a lateral surface and a longitudinal slot formed in at least one of the upper and lateral surfaces. The rail extrusion further includes a second

US 6,857,712 B1

3

portion having an upper surface and a longitudinal slot formed in the upper surface. Again, the longitudinal slots are preferably T-shaped. The upper surface of the second portion is formed at a downward angle with respect to upper surface of the first portion. The desktop unit has a finger engaged in the longitudinal slot of the first portion of the rail extrusion, wherein the desktop unit is able to be horizontally translated along a length of the first portion of the rail extrusion. Similarly, the console has a finger engaged in the longitudinal slot of the second portion of the rail extrusion, wherein the console box is able to be horizontally translated along a length of the second portion of the rail extrusion.

Preferably, the rail extrusion further includes a web portion connecting the first and second portions. The web portion includes at least one longitudinal cavity formed therein, for containing electrical wiring for the workstation, and at least one grommet opening for accessing the electrical wiring contained within the cavity. Additionally, the single extrusion can be formed with a plurality of T-shaped slots extending the entire length of the single extrusion.

In another alternative embodiment, the multi-media workstation includes at least two vertical frames, wherein each frame has an aperture therethrough and at least one finger extending inwardly into the aperture. A rail extrusion is slidingly received in the aperture of each of the vertical flames and connects the frames. The rail extrusion has a perimeter surface and at least one longitudinal slot formed in the perimeter surface. The slot engages the fingers of the vertical frames, wherein the vertical frames are able to be horizontally translated along a length of the rail extrusion. Similar to that described above, the workstation in this embodiment also includes a desktop unit having a finger engaged in the longitudinal slot of the rail extrusion, wherein the desktop unit is able to be horizontally translated along a length of the rail extrusion. The rail extrusion of this embodiment preferably has a circular cross-section, and a plurality of longitudinal slots formed in around the perimeter surface at spaced locations.

Again, a console box unit can also be mounted to the rail extrusion. However, in this embodiment, the console box unit preferably includes a console box and a console box bracket. The console box bracket includes an aperture therethrough and at least one finger extending inwardly into the aperture. The aperture slidingly receives the rail extrusion and the finger engages the longitudinal slot of the rail extrusion, wherein the console box unit is able to be horizontally translated along a length of the rail extrusion.

The desktop unit also preferably includes a worksurface and at least two desktop brackets fixed to a bottom surface thereof. Each of the desktop brackets includes an aperture therethrough and at least one finger extending inwardly into the aperture. The aperture slidingly receives the rail extrusion and the finger engages the longitudinal slot of the rail extrusion.

Additionally, the workstation may also include a shelf unit mounted to the rail extrusion, wherein the shelf unit is able to be horizontally translated along a length of the rail extrusion. The shelf unit preferably includes a flat surface and a shelf bracket fixed to a bottom surface thereof. The shelf bracket includes an aperture therethrough and at least one finger extending inwardly into the aperture. The aperture slidingly receives the rail extrusion and the finger engages the longitudinal slot of the rail extrusion. The shelf unit is preferably spaced vertically higher than the desktop unit and the console box unit is positioned between the shelf unit and the desktop unit.

Thus, the workstation of this embodiment can include a master rail system consisting of an extruded rail having a circular cross-section and a plurality of T-slots formed along the length of the rail and angularly spaced around its

4

circumference. In this manner, the electronic components and the work surface are mounted to the rail system and can be both horizontally and angularly adjusted to suit the user's needs. Additionally, the various components of the workstation can be interchanged and new components can be added to suit the user's needs.

In all embodiments of the present invention, the various electrical components of the workstation are mounted to the master rail system in such a manner that they can be horizontally adjusted to suit any need. Additionally, the work surface is also mounted to the master rail system and is also provided with horizontal adjustment. In particular, the electrical components and the work surface are provided with mounting provisions which are inserted within and engage the T-shaped slots of the master rail system. The mounting provisions permit horizontal translation of the components and the work surface along the entire length of the T-slot in the master rail system. As a result of the present invention, a totally adjustable and interchangeable workstation system is provided.

Other objects and features of the present invention will become apparent from the following detailed description considered in conjunction with the accompanying drawings. It is to be understood, however, that the drawings are designed as an illustration only and not as a definition of the limits of the invention.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a top perspective view of the multi-media workstation formed in accordance with the present invention.

FIG. 2 is a top plan view of the workstation shown in FIG. 1.

FIG. 3 is a side view of the workstation shown in FIG. 2 taken along line 3—3.

FIG. 4 is an expanded detailed view of the master rail system shown in FIG. 3 as indicated by the dotted line 4.

FIG. 5 is an expanded detailed view of an alternative embodiment of the master rail system shown in FIG. 4.

FIG. 6 is a top perspective view of an alternative embodiment of the multi-media workstation formed in accordance with the present invention.

FIG. 7 is a cross-sectional view of the extrusion shown in FIG. 6.

FIG. 8 is a side view of the work station leg shown in FIG. 6.

FIG. 9 is a side view of desktop bracket shown in FIG. 6.

FIG. 10 is a side view of the shelf bracket shown in FIG. 6.

FIG. 11 is a side view of the assembled workstation shown in FIG. 6.

FIG. 12 is a side view of an additional support stand.

FIG. 13 is a side view of another additional support stand.

FIG. 14 is a side view of an alternative configuration of the workstation shown in FIG. 6

FIG. 15 is a top plan view of the workstation shown in FIG. 6.

FIG. 16 is a front plan view of the workstation shown in FIG. 6.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. 1 shows a multi-media workstation 10 formed in accordance with the present invention. This type of workstation can typically be found at a control center for monitoring and controlling audiovisual equipment. Such work-

US 6,857,712 B1

5

stations can be found, for example, in television studios, radio stations, security centers, air traffic control centers and financial and brokerage institutions.

The workstation 10 includes a console 12 having a desktop unit 14 including a flat work surface or desktop 15. The console 12 supports various audiovisual equipment such as computers 16, computer monitors 18, television monitors 20 and flat monitors 22. Television monitors 20 are typically mounted to and contained within standard-sized console boxes 24, which are also part of console 12. The supporting electronic hardware 26 can be stored within cabinets 27 provided below the desktop 14 of the console 12. One or more rolling chairs 28 are also typically provided to allow the operator(s) to monitor the equipment and to comfortably move from one piece of equipment to the other as required.

Referring now to FIGS. 2–4, the console 12 of the present invention includes a master rail system 30 integrated into the frame of the console for providing maximum horizontal adjustability of the various components of the workstation 10. In particular, the master rail system 30 allows for horizontal movement of the console boxes 24, as indicated by arrows 32, as well as horizontal movement of one or more desktops 14, as indicated by arrows 34. As will be discussed in further detail below, the master rail system 30 additionally includes provisions for mounting and horizontally adjusting the position of other secondary or auxiliary equipment between the desktop 14 and the console boxes 24.

Referring to FIGS. 3 and 4, which are cross-sectional and expanded cross-sectional views respectively of the workstation 10 of FIG. 2, the console 12 includes a plurality of rigid steel frames 36, which are spaced at various intervals along the length of the console 12. The frames 36 may be of a welded construction and may include feet 38 for resting on the floor. The frames 36 may be connected from one to the other with brackets 39 to add rigidity and strength to the console 12. Mounted at the tops of the frames 36 is the master rail system 30, which extends the full length of the console 12. The master rail system 30 includes a first rail extrusion 40, a second rail extrusion 42 and a bracket assembly 43 including a spoil board 44 connected between the first and second rail extrusions.

Referring now specifically to FIG. 4, the first and second rail extrusions 40 and 42 are made from a metallic material, such as aluminum, and include a plurality of T-shaped slots 46 formed therein along the entire length of the extrusion. Preferably, the first rail extrusion 40 is rectangular in shape having two T-slots 46 on each lateral side and having a T-slot on both its upper and lower faces. The second rail extrusion 42 is preferably square in cross-section having a T-slot 46 formed on each side. The first and second rail extrusions 40 and 42 are mounted to the steel frames 36 by conventional bolts 48 having fittings 50 that engage one or more of the T-slots 46 of the rail extrusions.

The spoil board 44 is essentially a flat plate connecting the first and second rail extrusions 40 and 42 and extending along the length of the console 12. The spoil board 44 encloses a cavity 52 between the first rail extrusion 40, the second rail extrusion 42 and the steel frame 36 to contain electrical wiring for the various component of the workstation 10 along the length of the console 12. Standard wiring grommets 54 are provided at spaced openings 55 in the spoil board 44 for routing wires from the cavity 52 to the various electrical components mounted to the console 12. The spoil board 44 is supported by a plurality of spoil board brackets 56 intermittently spaced along the length of the spoil board 54. The spoil board brackets 56 include a finger 58 which is sized to fit within and engage an upper side T-slot 46a of the first rail extrusion 40. The opposite end of the spoil board bracket 56 includes a leg 60 which rests on the steel frame

6

36 of the console 12 for supporting the spoil board 44. The spoil board 44 includes a rear edge 62 which fits within the upper T-slot 46b of the second rail extrusion 42. In this manner, the spoil board 44 is connected between the first and second rail extrusions 40 and 42.

In an alternative embodiment, as shown in FIG. 5, the first rail extrusion 40, the second rail extrusion 42 and the spoil board 54 can be integrated into a single extrusion 64 mounted to the top of the console 12. The single extrusion 64 includes a first portion 63, similar to the first extrusion 40, a second portion 65, similar to the second extrusion 42, and a web portion 67, similar to the bracket assembly 43, connecting the first and second portions. Like the first and second rail extrusions 40 and 42 described above, the first and second portions 63 and 65 of the single extrusion 64 are formed with a plurality of T-shaped slots 68 extending the entire length of the single extrusion. Preferably, there is at least one T-slot 68a formed on a top surface 69 of the first portion 63, one or more T-slots 68b formed on a side surface 71 of the first portion perpendicular to the top surface, and at least one T-slot 68c formed on an inclined surface 73 of the second portion 65. Here, the upper surface 73 of the second portion 65 is formed at an angle with respect to the upper surface 69 of the first portion 63.

The single extrusion 64 further preferably includes one or more wire cavities 66 formed in the web portion 67 and extending along the length of the extrusion and access openings 67a intermittently spaced along the length of the extrusion for routing wires from the cavity 66 to the various electrical components mounted to the console 12. The single extrusion 64 is mounted to the steel frames 36 in a manner similar to the first and second rail extrusions 40 and 42 by means of conventional bolts 48 and T-slot fittings 50 that engage T-slots 68 formed in the single extrusion 64.

Returning to FIGS. 3 and 4, the various electrical components of the workstation 10 are mounted to the master rail system 30 in such a manner that they can be horizontally adjusted to suit any need. Additionally, the desktop 14 unit is also mounted to the master rail system 30 and is also provided with horizontal adjustment. In particular, each desktop unit 14 includes a flat worksurface 15 and at least two desktop brackets 70 fixed to an underside thereof. The desktop bracket 70 includes a finger 72 formed on the inside edge thereof, which is sized to fit within and engage one of the T-slots 46 of the master rail system 30. Preferably, the desktop bracket 70 is mounted to an upper side T-slot 46c of the first rail extrusion 40 opposite the T-slot 46a for mounting the spoil board 44. The finger 72 of the desktop bracket 70 is shaped for insertion into the T-slot 46c and grips the inside surface of the T-slot. However, the finger 72 permits horizontal translation of the bracket 70 along the length of the T-slot 46c. Thus, the desktop 14 can be moved to any desirable location along the length of the rail system 30.

The console boxes 24 are also mounted on the rail system 30 with the ability to translate horizontally. The console box 24 is typically a wooden rectangular structure for mounting a computer or television monitor therein. However, the console box 24, of the present invention includes a right angle 74 fixed to a bottom surface thereof. One leg of the angle is fixed to the bottom of the console box while the other perpendicular leg forms a finger 75 which is seated in the top T-slot 46d of the second rail extrusion 42. With the finger 75 of the angle 74 seated within the T-slot 46d of the second rail extrusion 42, the console box 24 is prevented from moving forward or backward. However, the T-slot 46d permits the console box 24 to translate horizontally along the length of the T-slot. Preferably, the top of the steel frame 36 is inclined so that the upper surface 47 of the second rail extrusion 42 is disposed at a downward angle with respect to the upper surface 41 of the first rail extrusion 40 when

7

both are mounted to the steel frame. Thus, when mounted to the second rail extrusion 42, the console box 24 will be oriented at a slight downward angle with respect to the desk top 14 for ergonomic purposes.

The upper T-slot 46e of the first rail extrusion 40 is used for mounting additional workstation components to the console 12. For example, FIG. 3 shows a flat screen monitor 22 attached to a vertical support stand 76, which in turn is mounted to the upper T-slot 46c of the first rail extrusion 40. The vertical support stand 76 includes a leg 78 having a reshaped finger or fitting 70 fixed thereto, for example, by a bolt. The T-shaped fitting 80 of the support stand 76 engages the inner surfaces of the T-slot 46e to maintain the support stand 76 in a vertical orientation. However, the T-shaped fitting 80 is permitted to translate horizontally along the length of the first rail extrusion 40. Thus, the flat screen monitor 22 can be horizontally translated to any desired location on the console 12. While a flat screen monitor 22 is shown attached to the upper T-slot 46e, other types of equipment, such as script stands, microphone stands, lighting fixtures etc., can also be interchangeably attached to the rail system. To reduce frictional wear within the T-slots 46, the T-slots can be provided with Teflon™ caps 82.

It is to be understood that the attachment of the console box 24, the desktop 14 and the vertical support stand 76 to the single rail extrusion 64 shown in FIG. 5 is similar to that as shown and described with respect to the first and second rail extrusions 40 and 42. In particular, the longitudinal T-slots 68 of the single rail extrusion 64 allow for mounting and horizontal translation of all the components of the workstation 10.

The workstation 10 is shown in FIGS. 1–5 in an L-shaped configuration consisting of two end pieces and a corner piece. However, it is conceivable that the workstation 10 of the present invention can take any desired configuration, for example, a straight configuration, a rectangular configuration, etc. Moreover, two or more consoles 12 can be connected to form a larger work station. In this case, longer master rail systems 30 can be utilized or a bridge can be constructed between existing rail systems. Additionally, the console 12 of the present invention can be separated into individual workstations 100, each having its own master rail system, as shown in FIG. 6.

The workstation 100 shown in FIG. 6 can be adapted for individual use, such as with home computers. The workstation 100 generally includes two vertical frames or legs 102 an extruded rail 104 connecting the two legs, a desktop unit 106 supported on the rail 104 and a shelf unit 108 also supported on the rail. The desktop unit 106 provides a working surface 107 for the user and a surface for a computer keyboard, for example. The shelf unit 108 is spaced vertically higher than the desktop 106 for supporting one or more computer monitors at eye level to the user. The workstation 100 can further be provided with console boxes 110, which are also supported on the rail 104, for containing electrical components such as computer hard drives, or audio visual equipment.

Referring additionally to FIG. 7, an alternative embodiment for the master rail system is shown incorporated into the workstation 100 of FIG. 6. The alternative master rail embodiment consists of an extruded rail 104 having, a circular cross-section and a plurality of T-slots 112 formed along the length of the rail and angularly spaced around its circumference. Again, the rail 104 is preferably made from a metallic material, such as aluminum.

The rail 104 fits within an aperture or opening 114 of each of the legs 102, as shown in FIG. 8. The opening 114 of the legs 102 includes at least one inwardly projecting T-shaped finger 116 which engages the T-slot 112 of the rail 104 to prevent rotational movement of the leg and the rail. The legs

8

102 are simply slid along the length of the rail 104 to their desired position.

Referring to FIG. 9, the desktop unit 106 includes a worksurface 107 and at least two desktop brackets 118 fixed to the bottom surface thereof. Each desktop bracket 118 has an opening 120 for receiving the rail 104. The opening 120 of the desktop bracket 118 similarly includes inwardly projecting fingers 122 which engage the T-slots 112 of the rail 104 to prevent rotational movement of the desktop 106 with respect to the rail. However, because the T-slots 112 of the rail 104 extend the entire length of the rail, the desktop 106 and the legs 102 can be adjusted horizontally along the rail as desired.

Referring now to FIG. 10, the shelf unit 108 similarly includes a flat surface 109 and at least two shelf brackets 124 fixed to a bottom surface thereof. The shelf bracket 124 also has an opening 126 formed therethrough for receiving the rail 104. The shelf bracket 124 also includes fingers 128 which project inwardly into the opening 126 for engaging the T-slots 112 of the rail 104 to prevent rotational movement of the shelf 108.

FIG. 11 is a side view of an assembled workstation 100 including legs 102 circular rail extrusion 104, desktop 106 and shelf 108. As mentioned above, one or more console boxes 110, for containing computer hardware for example, can additionally be mounted to the rail 104. The console box 110 would therefore include a console box bracket 130 having an opening with inwardly projecting fingers for engaging the rail 104. The circular rail extrusion 104 of the present invention allows the desktop 106, the shelf 108 and/or the console box 110 to be positioned in any desired angular orientation depending on which T-slots 112 are chosen. For example, the console box 110 is shown in FIG. 11 oriented at a slight downward angle with respect to the desktop 106.

It can be appreciated that additional workstation components can easily be mounted to the rail 104. For example, a flat screen monitor 22 can be attached to the rail 104 by a vertical support stand 132 similar to that shown in FIGS. 3 and 4. The support stand 132 would include a circular rail mounting bracket 134 having a finger 136 for engaging a T-slot of the rail 104 as shown in FIG. 12. It is further appreciated that the various components of the workstation 100 can be interchanged to suit the user's needs. For example, FIGS. 13 and 14 show the workstation 100 without the shelf 108. Here, a smaller shelf 138 having a mounting bracket 140 including a finger 142 is utilized. The smaller shelf 138 can be utilized if it is desired to support a computer monitor 18 or a flat screen monitor 22 at the same level as the desktop 106.

As mentioned above, because the T-slots 112 extend the entire length of the circular rail extrusion 104, all components mounted to the rail can be horizontally adjusted to suit the user's needs. For example, a computer monitor 18, a flat screen 22 and/or a console box 110 mounted to the rail 104 can be moved horizontally as indicated by the arrows 144 in FIGS. 15 and 16. Additionally, the legs 102 can be positioned along the rail 104 so that the ends of the rail extend beyond the legs for mounting such additional equipment as speakers 146 supported on speaker stands 148. As a result of the present invention, a totally adjustable and interchangeable workstation system is provided.

While there has been described what is presently believed to be the preferred embodiments of the invention, those skilled in the art will realize that various changes and modifications may be made to the invention without departing from the spirit of the invention and it is intended to claim all such changes and modifications as forward in the scope of the invention.

US 6,857,712 B1

**9**

What is claimed is:

1. A multi-media workstation comprising:

at least two vertical frames having an upper mounting surface thereon;

a first rail extrusion mounted to said mounting surface of said vertical frames and connecting said frames, said first rail extrusion including an upper surface, a lateral surface and a longitudinal slot formed in at least one of said upper and lateral surfaces;

a second rail extrusion having an upper surface and a longitudinal slot formed in said upper surface, said second rail extrusion being mounted to said mounting surface of said vertical frames and connecting said frames such that said upper surface of said second rail extrusion is disposed at a downward angle with respect to said upper surface of said first rail extrusion;

a desktop unit having a finger engaged in said longitudinal slot of said first rail extrusion, wherein said desktop unit is able to be horizontally translated along a length of said first rail extrusion; and

a console box for supporting a first piece of audiovisual equipment, said console box having a finger engaged in said longitudinal slot of said second rail extrusion, wherein said console box is able to be horizontally translated along a length of said second extrusion.

2. A multi-media workstation as defined in claim 1, further comprising a bracket assembly connected between said first and second rail extrusions.

3. A multi-media workstation as defined in claim 2, wherein said bracket assembly comprises a flat panel extending between said first and second rail extrusions and at least one bracket for supporting said flat panel.

4. A multi-media workstation as defined in claim 3, wherein said flat panel encloses a cavity between said first rail extrusion, said second rail extrusion and said vertical frames for containing electrical wiring for said workstation therein.

5. A multi-media workstation as defined in claim 4, wherein said flat panel includes at least one grommet opening for accessing said electrical wiring contained within said cavity.

6. A multi-media workstation as defined in claim 1, wherein said desktop unit comprises a work surface and at least two desktop brackets for supporting said work surface, said desktop brackets each including a finger engaged in said longitudinal slot of said first rail extrusion.

7. A multi-media workstation as defined in claim 1, wherein said longitudinal slots in said first and second rail extrusions are T-shaped.

8. A multi-media workstation as defined in claim 1, wherein said first rail extrusion includes a second longitudinal slot formed in one of said upper and lateral surfaces and wherein said workstation further comprises a support stand for supporting a second piece of workstation equipment, said support stand having a finger engaged in said second longitudinal slot of said first rail extrusion,

**10**

wherein said support stand is able to be horizontally translated along a length of said first rail extrusion.

9. A multi-media workstation comprising:

at least two vertical frames having an upper mounting surface thereon;

a rail extrusion mounted to said mounting surface of said vertical frames and connecting said frames, said rail extrusion including a first portion having an upper surface, a lateral surface and a longitudinal slot formed in at least one of said upper and lateral surfaces and a second portion having an upper surface and a longitudinal slot formed in said upper surface, said upper surface of said second portion being formed at a downward angle with respect to said upper surface of said first portion;

a desktop unit having a finger engaged in said longitudinal slot of said first portion of said rail extrusion, wherein said desktop unit is able to be horizontally translated along a length of said first portion of said rail extrusion; and

a console box for supporting a first piece of audiovisual equipment, said console box having a finger engaged in said longitudinal slot of said second portion of said rail extrusion, wherein said console box is able to be horizontally translated along a length of said second portion of said rail extrusion.

10. A multi-media workstation as defined in claim 9, wherein said rail extrusion further comprises a web portion connecting said first and second portions.

11. A multi-media workstation as defined in claim 10, wherein said web portion includes at least one longitudinal cavity formed therein for containing electrical wiring for said workstation.

12. A multi-media workstation as defined in claim 1, wherein said web portion includes at least one grommet opening for accessing said electrical wiring contained within said cavity.

13. A multi-media workstation as defined in claim 9, wherein said desktop unit comprises a work surface and at least two desktop brackets for supporting said work surface, said desktop brackets each including a finger engaged in said longitudinal slot of said first portion of said rail extrusion.

14. A multi-media workstation as defined in claim 9, wherein said longitudinal slots in said first and second portions of said rail extrusion are T-shaped.

15. A multi-media workstation as defined in claim 9, wherein said first portion of said rail extrusion includes a second longitudinal slot formed in one of said upper and lateral surfaces and wherein said workstation further comprises a support stand for supporting a second piece of workstation equipment, said support stand having a finger engaged in said second longitudinal slot of said first portion of said rail extrusion wherein said support stand is able to be horizontally translated along a length of said rail extrusion.

* * * * *

EXHIBIT B

# HOFFMANN & BARON, LLP

ATTORNEYS AT LAW

CHARLES R. HOFFMANN
RONALD J. BARON
DANIEL A. SCOLA, JR. *
A. THOMAS KAMMER
SALVATORE J. ABBRUZZESE*

ANTHONY E. BENNETT†

STEVEN T. ZUSCHLAG
SUSAN A. SIPOS
KEVIN E. MCDERMOTT
RODERICK S.W. TURNER
ROBERT C. MORRISS
JOHN S. SOPKO*
JUSTIN K. HOLMES
CHRISTINA L. WARRICK*
ANNA-LISA GALLO

PATENT AGENTS
GLORIA K. SZAKIEL, Ph.D.
ROHINI K. GARG

ALAN M. SACK
IRVING N. FEIT
R. GLENN SCHROEDER
GLENN T. HENNEBERGER

LUDOMIR A. BUDZYN†

LAUREN T. EMR
JAMES F. HARRINGTON
STEPHEN CANNAVALE*
JAMIE M. LARMANN*
GORDON F. BELCHER
ANDREA M. WILKOVICH*
BETSY K. DOWD
JOHN X. HABERMAN

EDNA I. GERGEL, Ph.D.
EDMUND GUTIERREZ, Ph.D

6900 JERICHO TURNPIKE
SYOSSET, NEW YORK 11791-4407
(516) 822-3550
FACSIMILE (516) 822-3582
www.hoffmannbaron.com

NEW JERSEY OFFICE
1055 PARSIPPANY BLVD.
PARSIPPANY, N.J. 07054
(973) 331-1700
FAX (973) 331-1717

SCIENTIFIC ADVISOR
DANIEL A. SCOLA, SR., Ph.D.

* NOT ADMITTED IN N.Y.
† SENIOR ATTORNEY

March 1, 2005

**VIA FEDERAL EXPRESS**

Mr. Jerry Hahn and
Mr. Frank LaPallo
TBC Consoles
115 Cabot Street
West Babylon, New York 11704

    Re: United States Patent No. 6,857,712
       Issued to Forecast Consoles, Inc.

Gentlemen:

  Further to our letter of June 14, 2004, enclosed is a copy of United States Patent No. 6,857,712, recently issued to our client, Forecast Consoles, Inc.

  We assume you will reconsider your position set forth in your letter of May 7, 2004 in view of the enclosed issued patent and we look forward to your prompt response. We also expect you to refrain from taking and/or continuing to take any actions which may conflict with our client's patent rights. Specifically, we demand that you immediately stop offering for sale your intelliTrac console system.

  Please be further advised, that our client will take whatever steps are deemed necessary to protect its patent rights against any and all infringers in the United States.

  We look forward to your cooperation and prompt response in this matter.

        Sincerely,

        Charles R. Hoffmann

CRH:STZ

US006857712B1

(12) **United States Patent**      (10) **Patent No.:**      **US 6,857,712 B1**
Haberman                          (45) **Date of Patent:**      **Feb. 22, 2005**

(54) **MULTI-MEDIA WORKSTATION HAVING A MASTER RAIL SYSTEM**

(75) Inventor: **William G. Haberman**, Glen Head, NY (US)

(73) Assignee: **Forecast Consoles, Inc.**, Deer Park, NY (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **10/407,436**

(22) Filed: **Apr. 4, 2003**

**Related U.S. Application Data**

(60) Provisional application No. 60/370,070, filed on Apr. 4, 2002.

(51) **Int. Cl.$^7$** ......................... A47B 47/00; A47F 10/00
(52) **U.S. Cl.** .............................. **312/223.3**; 108/50.01; 108/143; 108/102; 52/36.1; 52/36.4; 312/195
(58) **Field of Search** ................................ 52/36.1, 36.4, 52/36.5; 312/223.3, 194, 195, 265.4, 265.1; 108/50.01, 50.02, 137, 143, 102

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,382,642 | A | * | 5/1983 | Burdick | ...................... 312/194 |
| 4,838,177 | A | | 6/1989 | Vander Park | |

| | | | | | |
|---|---|---|---|---|---|
| 4,974,913 | A | * | 12/1990 | Vogt et al. | ................... 312/195 |
| 5,337,525 | A | * | 8/1994 | Zaccai et al. | .................. 52/35 |
| 5,428,928 | A | * | 7/1995 | Hellwig et al. | ............. 52/239 |
| 5,974,985 | A | * | 11/1999 | Flototto et al. | ........ 108/157.18 |
| 6,042,203 | A | * | 3/2000 | Bogucki | ................... 312/223.3 |
| 6,152,048 | A | | 11/2000 | Vander Park | |
| 6,189,268 | B1 | * | 2/2001 | Carr et al. | ................... 52/36.1 |
| 6,279,761 | B1 | | 8/2001 | Niewiadomski et al. | |
| 6,283,043 | B1 | | 9/2001 | Stern et al. | |
| 6,302,035 | B1 | * | 10/2001 | Frenkler et al. | ............ 108/102 |
| 6,619,765 | B2 | * | 9/2003 | Visser et al. | ............. 312/194 |
| 2003/0020381 | A1 | * | 1/2003 | Cattaneo | .................. 312/223.6 |
| 2003/0071546 | A1 | * | 4/2003 | Gosling et al. | ......... 312/223.3 |
| 2004/0035332 | A1 | * | 2/2004 | Lin | ......................... 108/50.01 |

* cited by examiner

*Primary Examiner*—Brian E. Glessner
(74) *Attorney, Agent, or Firm*—Hoffmann & Baron, LLP

(57) **ABSTRACT**

A multi-media workstation having a master rail system for permitting horizontal adjustment of the various components of the workstation. The workstation generally includes a console having a work surface and a master rail system for supporting various audiovisual equipment. The master rail system includes a rail extrusion connecting at least two frames and having a longitudinal slot formed in at least one of its surfaces. The various components of the workstation each include a finger engaged in the longitudinal slot of the rail extrusion, wherein the component is able to be horizontally translated along a length of the rail extrusion.

**15 Claims, 9 Drawing Sheets**



03/07/2005 10:24 FAX 16312934075          TBC Consoles                    ⊠004



FIG. 1

03/07/2005 10:24 FAX 16312934075     TBC Consoles     ☑005



FIG. 2





FIG. 3

03/07/2005 10:24 FAX 16312934075　　　TBC Consoles　　　@007

**U.S. Patent**　　　Feb. 22, 2005　　　Sheet 4 of 9　　　US 6,857,712 B1



FIG. 4



FIG. 5

03/07/2005 10:25 FAX 16312934075          TBC Consoles          ☑009

**U.S. Patent**          Feb. 22, 2005          **Sheet 6 of 9**          **US 6,857,712 B1**



FIG. 6

03/07/2005 10:25 FAX 16312934075 TRC Consoles 🖂 010

**U.S. Patent**     Feb. 22, 2005     Sheet 7 of 9     US 6,857,712 B1



FIG. 8



FIG. 9



FIG. 7

Case 1:05-cv-02756-KMW    Document 2    Filed 03/10/2005    Page 11 of 35



FIG. 15



FIG. 16



US 6,857,712 B1

1

# MULTI-MEDIA WORKSTATION HAVING A MASTER RAIL SYSTEM

## CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of U.S. Provisional Application No. 60/370,070, filed on Apr. 4, 2002.

## FIELD OF THE INVENTION

The present invention relates generally to multi-media workstations for supporting various electronic equipment, and more particularly to a modular workstation console having a master rail system that provides for full horizontal adjustment of the various components of the workstation.

## BACKGROUND OF THE INVENTION

Workstations for mounting audio-visual, electrical, communication and computer equipment are well known and are available from different manufacturers. It is also known to construct office workstations in a modular fashion that permits a wide variety of furniture groupings or arrangements. However, if numerous electrical components are required together in a relatively small workstation space, it becomes essential to easily arrange such components in a compact manner whereby the equipment is comfortably and conveniently accessible to the user or users. Efficient routing of the electrical wiring and cables so as not to detract from the appearance of the workstation also becomes an issue. Wiring and cables should be located away from the floor areas where persons might trip on them and should be easily accessible for service personnel.

Some particular environments that require increasingly complicated and sophisticated workstations include television studios, radio stations, security centers, air traffic control centers and financial and brokerage institutions where users typically need access to numerous television monitors, computer displays, data processors and telecommunications equipment arranged in a side-by-side manner. In such environments, workstations are typically custom built and installed by the manufacturer based on the user's particular equipment requirements. As such, the workstation arrangement for supporting the various electronic components is usually permanently fixed. If it later becomes necessary to expand the workstation or rearrange the electronic components, the workstation must be rebuilt or replaced. The result is that the workstation may be put out of use during the modification or expansion. Thus, such known workstations are not optimally suited for use in a dynamic work environment, where workspaces are ideally capable of rapid configuration and reconfiguration by the workers themselves in a highly efficient manner.

Accordingly, it would be desirable to provide a flexible, modular workstation that permits the user to easily adjust the positions of the various components of the workstation as desired. Additionally, it would be desirable to provide such a workstation that is adapted to allow mounting of additional equipment or components and that can be easily connected to other workstations.

## SUMMARY OF THE INVENTION

The present invention is a multi-media workstation having a master rail system for permitting horizontal adjustment of the various components of the workstation. The workstation generally includes a console having a work surface and a master rail system for supporting various audiovisual equipment.

In a preferred embodiment, the multi-media workstation includes at least two vertical frames having an upper mount-

2

ing surface thereon, a first rail extrusion mounted to the mounting surface of the vertical frames and connecting the frames, a second rail extrusion mounted to the mounting surface of the vertical frames and connecting the frames, a desktop unit mounted to the first rail extrusion and a console box, for supporting a piece of audiovisual equipment, mounted to the second rail extrusion. The first rail extrusion has an upper surface, a lateral surface and a longitudinal slot formed in at least one of the upper and lateral surfaces. The second rail extrusion has an upper surface and a longitudinal slot formed in the upper surface. The longitudinal slots are preferably T-shaped. The second rail extrusion is mounted to the mounting surface of the vertical frames such that the upper surface of the second rail extrusion is disposed at a downward angle with respect to the upper surface of the first rail extrusion. The desktop unit has a finger engaged in the longitudinal slot of the first rail extrusion, wherein the desktop unit is able to be horizontally translated along a length of the first rail extrusion. Similarly, the console box has a finger engaged in the longitudinal slot of the second rail extrusion, wherein the console box is able to be horizontally translated along a length of the second extrusion.

Preferably, the workstation further includes a bracket assembly connected between the first and second rail extrusions. The bracket assembly includes a flat panel extending between the first and second rail extrusions and at least one bracket for supporting the flat panel. The flat panel encloses a cavity between the first rail extrusion, the second rail extrusion and the vertical frames for containing electrical wiring for the workstation therein. Additionally, the flat panel includes at least one grommet opening for accessing the electrical wiring contained within the cavity.

The desktop unit preferably includes a work surface and at least two desktop brackets for supporting the work surface. The desktop brackets each include a finger engaged in the longitudinal slot of the first rail extrusion.

Furthermore, the first rail extrusion preferably includes a second longitudinal slot formed in one of the upper and lateral surfaces and the workstation further preferably includes a support stand for supporting a second piece of workstation equipment. The support stand has a finger engaged in the second longitudinal slot of the first rail extrusion, wherein the support stand is able to be horizontally translated along a length of the first rail extrusion.

Thus, the console includes a plurality of rigid steel frames, which are spaced at various intervals along the length of the console. The master rail system is integrated into the frames of the console for providing maximum horizontal adjustability of the various components of the workstation. The first and second rail extrusions can include a plurality of T-shaped slots formed therein along the entire length of the extrusion. The flat panel spoil board is essentially a flat plate connecting the first and second rail extrusions and extending along the length of the console. The spoil board encloses a cavity to contain electrical wiring for the various components of the workstation along the length of the console.

In an alternative embodiment, the first rail extrusion, the second rail extrusion and the spoil board can be integrated into a single extrusion mounted to the top of the console. Thus, in this embodiment, the workstation generally includes at least two vertical frames having an upper mounting surface thereon, a rail extrusion mounted to the mounting surface of the vertical frames and connecting the frames, a desktop unit mounted to the rail extrusion and a console box, for supporting a piece of audiovisual equipment, mounted to the rail extrusion. The rail extrusion includes a first portion having an upper surface, a lateral surface and a longitudinal slot formed in at least one of the upper and lateral surfaces. The rail extrusion further includes a second

US 6,857,712 B1

3

portion having an upper surface and a longitudinal slot formed in the upper surface. Again, the longitudinal slots are preferably T-shaped. The upper surface of the second portion is formed at a downward angle with respect to the upper surface of the first portion. The desktop unit has a finger engaged in the longitudinal slot of the first portion of the rail extrusion, wherein the desktop unit is able to be horizontally translated along a length of the first portion of the rail extrusion. Similarly, the console has a finger engaged in the longitudinal slot of the second portion of the rail extrusion, wherein the console box is able to be horizontally translated along a length of the second portion of the rail extrusion.

Preferably, the rail extrusion further includes a web portion connecting the first and second portions. The web portion includes at least one longitudinal cavity formed therein, for containing electrical wiring for the workstation, and at least one grommet opening for accessing the electrical wiring contained within the cavity. Additionally, the single extrusion can be formed with a plurality of T-shaped slots extending the entire length of the single extrusion.

In another alternative embodiment, the multi-media workstation includes at least two vertical frames, wherein each frame has an aperture therethrough and at least one finger extending inwardly into the aperture. A rail extrusion is slidingly received in the aperture of each of the vertical flames and connects the frames. The rail extrusion has a perimeter surface and at least one longitudinal slot formed in the perimeter surface. The slot engages the fingers of the vertical frames, wherein the vertical frames are able to be horizontally translated along a length of the rail extrusion. Similar to that described above, the workstation in this embodiment also includes a desktop unit having a finger engaged in the longitudinal slot of the rail extrusion, wherein the desktop unit is able to be horizontally translated along a length of the rail extrusion. The rail extrusion of this embodiment preferably has a circular cross-section and a plurality of longitudinal slots formed in around the perimeter surface at spaced locations.

Again, a console box unit can also be mounted to the rail extrusion. However, in this embodiment, the console box unit preferably includes a console box and a console box bracket. The console box bracket includes an aperture therethrough and at least one finger extending inwardly into the aperture. The aperture slidingly receives the rail extrusion and the finger engages the longitudinal slot of the rail extrusion, wherein the console box unit is able to be horizontally translated along a length of the rail extrusion.

The desktop unit also preferably includes a worksurface and at least two desktop brackets fixed to a bottom surface thereof. Each of the desktop brackets includes an aperture therethrough and at least one finger extending inwardly into the aperture. The aperture slidingly receives the rail extrusion and the finger engages the longitudinal slot of the rail extrusion.

Additionally, the workstation may also include a shelf unit mounted to the rail extrusion, wherein the shelf unit is able to be horizontally translated along a length of the rail extrusion. The shelf unit preferably includes a flat surface and a shelf bracket fixed to a bottom surface thereof. The shelf bracket includes an aperture therethrough and at least one finger extending inwardly into the aperture. The aperture slidingly receives the rail extrusion and the finger engages the longitudinal slot of the rail extrusion. The shelf unit is preferably spaced vertically higher than the desktop unit and the console box unit is positioned between the shelf unit and the desktop unit.

Thus, the workstation of this embodiment can include a master rail system consisting of an extruded rail having a circular cross-section and a plurality of T-slots formed along the length of the rail and angularly spaced around its

4

circumference. In this manner, the electronic components and the work surface are mounted to the rail system and can be both horizontally and angularly adjusted to suit the user's needs. Additionally, the various components of the workstation can be interchanged and new components can be added to suit the user's needs.

In all embodiments of the present invention, the various electrical components of the workstation are mounted to the master rail system in such a manner that they can be horizontally adjusted to suit any need. Additionally, the work surface is also mounted to the master rail system and is also provided with horizontal adjustment. In particular, the electrical components and the work surface are provided with mounting provisions which are inserted within and engage the T-shaped slots of the master rail system. The mounting provisions permit horizontal translation of the components and the work surface along the entire length of the T-slot in the master rail system. As a result of the present invention, a totally adjustable and interchangeable workstation system is provided.

Other objects and features of the present invention will become apparent from the following detailed description considered in conjunction with the accompanying drawings. It is to be understood, however, that the drawings are designed as an illustration only and not as a definition of the limits of the invention.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a top perspective view of the multi-media workstation formed in accordance with the present invention.

FIG. 2 is a top plan view of the workstation shown in FIG. 1.

FIG. 3 is a side view of the workstation shown in FIG. 2 taken along line 3—3.

FIG. 4 is an expanded detailed view of the master rail system shown in FIG. 3 as indicated by the dotted line 4.

FIG. 5 is an expanded detailed view of an alternative embodiment of the master rail system shown in FIG. 4.

FIG. 6 is a top perspective view of an alternative embodiment of the multi-media workstation formed in accordance with the present invention.

FIG. 7 is a cross-sectional view of the extrusion shown in FIG. 6.

FIG. 8 is a side view of the work station leg shown in FIG. 6.

FIG. 9 is a side view of desktop bracket shown in FIG. 6.

FIG. 10 is a side view of the shelf bracket shown in FIG. 6.

FIG. 11 is a side view of the assembled workstation shown in FIG. 6.

FIG. 12 is a side view of an additional support stand.

FIG. 13 is a side view of another additional support stand.

FIG. 14 is a side view of an alternative configuration of the workstation shown in FIG. 6

FIG. 15 is a top plan view of the workstation shown in FIG. 6.

FIG. 16 is a front plan view of the workstation shown in FIG. 6.

DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENTS

FIG. 1 shows a multi-media workstation 10 formed in accordance with the present invention. This type of workstation can typically be found at a control center for monitoring and controlling audiovisual equipment. Such work-

US 6,857,712 B1

5

stations can be found, for example, in television studios, radio stations, security centers, air traffic control centers and financial and brokerage institutions.

The workstation 10 includes a console 12 having a desktop unit 14 including a flat work surface or desktop 15. The console 12 supports various audiovisual equipment such as computers 16, computer monitors 18, television monitors 20 and flat monitors 22. Television monitors 20 are typically mounted to and contained within standard-sized console boxes 24, which are also part of console 12. The supporting electronic hardware 26 can be stored within cabinets 27 provided below the desktop 14 of the console 12. One or more rolling chairs 28 are also typically provided to allow the operator(s) to monitor the equipment and to comfortably move from one piece of equipment to the other as required.

Referring now to FIGS. 2–4, the console 12 of the present invention includes a master rail system 30 integrated into the frame of the console for providing maximum horizontal adjustability of the various components of the workstation 10. In particular, the master rail system 30 allows for horizontal movement of the console boxes 24, as indicated by arrows 32, as well as horizontal movement of one or more desktops 14, as indicated by arrows 34. As will be discussed in further detail below, the master rail system 30 additionally includes provisions for mounting and horizontally adjusting the position of other secondary or auxiliary equipment between the desktop 14 and the console boxes 24.

Referring to FIGS. 3 and 4, which are cross-sectional and expanded cross-sectional views respectively of the workstation 10 of FIG. 2, the console 12 includes a plurality of rigid steel frames 36, which are spaced at various intervals along the length of the console 12. The frames 36 may be of a welded construction and may include feet 38 for resting on the floor. The frames 36 may be connected from one to the other with brackets 39 to add rigidity and strength to the console 12. Mounted at the tops of the frames 36 is the master rail system 30, which extends the full length of the console 12. The master rail system 30 includes a first rail extrusion 40, a second rail extrusion 42 and a bracket assembly 43 including a spoil board 44 connected between the first and second rail extrusions.

Referring now specifically to FIG. 4, the first and second rail extrusions 40 and 42 are made from a metallic material, such as aluminum, and include a plurality of T-shaped slots 46 formed therein along the entire length of the extrusion. Preferably, the first rail extrusion 40 is rectangular in shape having two T-slots 46 on each lateral side and having a T-slot on both its upper and lower faces. The second rail extrusion 42 is preferably square in cross-section having a T-slot 46 formed on each side. The first and second rail extrusions 40 and 42 are mounted to the steel frames 36 by conventional bolts 48 having fittings 50 that engage one or more of the T-slots 46 of the rail extrusions.

The spoil board 44 is essentially a flat plate connecting the first and second rail extrusions 40 and 42 and extending along the length of the console 12. The spoil board 44 encloses a cavity 52 between the first rail extrusion 40, the second rail extrusion 42 and the steel frame 36 to contain electrical wiring for the various component of the workstation 10 along the length of the console 12. Standard wiring grommets 54 are provided at spaced openings 55 in the spoil board 44 for routing wires from the cavity 52 to the various electrical components mounted to the console 12. The spoil board 44 is supported by a plurality of spoil board brackets 56 intermittently spaced along the length of the spoil board 54. The spoil board brackets 56 include a finger 58 which is sized to fit within and engage an upper side T-slot 46a of the first rail extrusion 40. The opposite end of the spoil board bracket 56 includes a leg 60 which rests on the steel frame

6

36 of the console 12 for supporting the spoil board 44. The spoil board 44 includes a bent edge 62 which fits within the upper T-slot 46b of the second rail extrusion 42. In this manner, the spoil board 44 is connected between the first and the second rail extrusions 40 and 42.

In an alternative embodiment, as shown in FIG. 5, the first rail extrusion 40, the second rail extrusion 42 and the spoil board 54 can be integrated into a single extrusion 64 mounted to the top of the console 12. The single extrusion 64 includes a first portion 63, similar to the first extrusion 40, a second portion 65, similar to the second extrusion 42, and a web portion 67, similar to the bracket assembly 43, connecting the first and second portions. Like the first and second rail extrusions 40 and 42 described above, the first and second portions 63 and 65 of the single extrusion 64 are formed with a plurality of T-shaped slots 68 extending the entire length of the single extrusion. Preferably, there is at least one T-slot 68a formed on a top surface 69 of the first portion 63, one or more T-slots 68b formed on a side surface 71 of the first portion perpendicular to the top surface, and at least one T-slot 68c formed on an inclined surface 73 of the second portion 65. Here, the upper surface 73 of the second portion 65 is formed at an angle with respect to the upper surface 69 of the first portion 63.

The single extrusion 64 further preferably includes one or more wire cavities 66 formed in the web portion 67 and extending along the length of the extrusion and access openings 67a intermittently spaced along the length of the extrusion for routing wires from the cavity 66 to the various electrical components mounted to the console 12. The single extrusion 64 is mounted to the steel frames 36 in a manner similar to the first and second rail extrusions 40 and 42 by means of conventional bolts 48 and T-slot fittings 50 that engage T-slots 68 formed in the single extrusion 64.

Returning to FIGS. 3 and 4, the various electrical components of the workstation 10 are mounted to the master rail system 30 in such a manner that they can be horizontally adjusted to suit any need. Additionally, the desktop 14 unit is also mounted to the master rail system 30 and is also provided with horizontal adjustment. In particular, each desktop unit 14 includes a flat worksurface 15 and at least two desktop brackets 70 fixed to an underside thereof. The desktop bracket 70 includes a finger 72 formed on the inside edge thereof, which is sized to fit within and engage one of the T-slots 46 of the master rail system 30. Preferably, the desktop bracket 70 is mounted to an upper side T-slot 46c of the first rail extrusion 40 opposite the T-slot 46a for mounting the spoil board 44. The finger 72 of the desktop bracket 70 is shaped for insertion into the T-slot 46c and grips the inside surface of the T-slot. However, the finger 72 permits horizontal translation of the bracket 70 along the length of the T-slot 46c. Thus, the desktop 14 can be moved to any desirable location along the length of the rail system 30.

The console boxes 24 are also mounted on the rail system 30 with the ability to translate horizontally. The console box 24 is typically a wooden rectangular structure for mounting a computer or television monitor therein. However, the console box 24, of the present invention includes a right angle 74 fixed to a bottom surface thereof. One leg of the angle is fixed to the bottom of the console box while the other perpendicular leg forms a finger 75 which is seated in the top T-slot 46d of the second rail extrusion 42. With the finger 75 of the angle 74 seated within the T-slot 46d of the second rail extrusion 42, the console box 24 is prevented from moving forward or backward. However, the T-slot 46d permits the console box 24 to translate horizontally along the length of the T-slot. Preferably, the top of the steel frame 36 is inclined so that the upper surface 47 of the second rail extrusion 42 is disposed at a downward angle with respect to the upper surface 41 of the first rail extrusion 40 when

US 6,857,712 B1

7

both are mounted to the steel frame. Thus, when mounted to the second rail extrusion 42, the console box 24 will be oriented at a slight downward angle with respect to the desk top 14 for ergonomic purposes.

The upper T-slot 46e of the first rail extrusion 40 is used for mounting additional workstation components to the console 12. For example, FIG. 3 shows a flat screen monitor 22 attached to a vertical support stand 76, which in turn is mounted to the upper T-slot 46c of the first rail extrusion 40. The vertical support stand 76 includes a leg 78 having a reshaped finger or fitting 70 fixed thereto, for example, by a bolt. The T-shaped fitting 80 of the support stand 76 engages the inner surfaces of the T-slot 46e to maintain the support stand 76 in a vertical orientation. However, the T-shaped fitting 80 is permitted to translate horizontally along the length of the first rail extrusion 40. Thus, the flat screen monitor 22 can be horizontally translated to any desired location on the console 12. While a flat screen monitor 22 is shown attached to the upper T-slot 46e, other types of equipment, such as script stands, microphone stands, lighting fixtures etc., can also be interchangeably attached to the rail system. To reduce frictional wear within the T-slots 46, the T-slots can be provided with Teflon™ caps 82.

It is to be understood that the attachment of the console box 24, the desktop 14 and the vertical support stand 76 to the single rail extrusion 64 shown in FIG. 5 is similar to that as shown and described with respect to the first and second rail extrusions 40 and 42. In particular, the longitudinal T-slots 68 of the single rail extrusion 64 allow for mounting and horizontal translation of all the components of the workstation 10.

The workstation 10 is shown in FIGS. 1–5 in an L-shaped configuration consisting of two end pieces and a corner piece. However, it is conceivable that the workstation 10 of the present invention can take any desired configuration, for example, a straight configuration, a rectangular configuration, etc. Moreover, two or more consoles 12 can be connected to form a larger work station. In this case, longer master rail systems 30 can be utilized or a bridge can be constructed between existing rail systems. Additionally, the console 12 of the present invention can be separated into individual workstations 100, each having its own master rail system, as shown in FIG. 6.

The workstation 100 shown in FIG. 6 can be adapted for individual use, such as with home computers. The workstation 100 generally includes two vertical frames or legs 102 an extruded rail 104 connecting the two legs, a desktop unit 106 supported on the rail 104 and a shelf unit 108 also supported on the rail. The desktop unit 106 provides a working surface 107 for the user and a surface for a computer keyboard, for example. The shelf unit 108 is spaced vertically higher than the desktop 106 for supporting one or more computer monitors at eye level to the user. The workstation 100 can further be provided with console boxes 110, which are also supported on the rail 104, for containing electrical components such as computer hard drives, or audio visual equipment.

Referring additionally to FIG. 7, an alternative embodiment for the master rail system is shown incorporated into the workstation 100 of FIG. 6. The alternative master rail embodiment consists of an extruded rail 104 having a circular cross-section and a plurality of T-slots 112 formed along the length of the rail and angularly spaced around its circumference. Again, the rail 104 is preferably made from a metallic material, such as aluminum.

The rail 104 fits within an aperture or opening 114 of each of the legs 102, as shown in FIG. 8. The opening 114 of the legs 102 includes at least one inwardly projecting T-shaped finger 116 which engages the T-slot 112 of the rail 104 to prevent rotational movement of the leg and the rail. The legs

8

102 are simply slid along the length of the rail 104 to their desired position.

Referring to FIG. 9, the desktop unit 106 includes a worksurface 107 and at least two desktop brackets 118 fixed to the bottom surface thereof. Each desktop bracket 118 has an opening 120 for receiving the rail 104. The opening 120 of the desktop bracket 118 similarly includes inwardly projecting fingers 122 which engage the T-slots 112 of the rail 104 to prevent rotational movement of the desktop 106 with respect to the rail. However, because the T-slots 112 of the rail 104 extend the entire length of the rail, the desktop 106 and the legs 102 can be adjusted horizontally along the rail as desired.

Referring now to FIG. 10, the shelf unit 108 similarly includes a flat surface 109 and at least two shelf brackets 124 fixed to a bottom surface thereof. The shelf bracket 124 also has an opening 126 formed therethrough for receiving the rail 104. The shelf bracket 124 also includes fingers 128 which project inwardly into the opening 126 for engaging the T-slots 112 of the rail 104 to prevent rotational movement of the shelf 108.

FIG. 11 is a side view of an assembled workstation 100 including legs 102 circular rail extrusion 104, desktop 106 and shelf 108. As mentioned above, one or more console boxes 110, for containing computer hardware for example, can additionally be mounted to the rail 104. The console box 110 would therefore include a console box bracket 130 having an opening with inwardly projecting fingers for engaging the rail 104. The circular rail extrusion 104 of the present invention allows the desktop 106, the shelf 108 and/or the console box 110 to be positioned in any desired angular orientation depending on which T-slots 112 are chosen. For example, the console box 110 is shown in FIG. 11 oriented at a slight downward angle with respect to the desktop 106.

It can be appreciated that additional workstation components can easily be mounted to the rail 104. For example, a flat screen monitor 22 can be attached to the rail 104 by a vertical support stand 132 similar to that shown in FIGS. 3 and 4. The support stand 132 would include a circular rail mounting bracket 134 having a finger 136 for engaging the T-slot of the rail 104 as shown in FIG. 12. It is further appreciated that the various components of the workstation 100 can be interchanged to suit the user's needs. For example, FIGS. 13 and 14 show the workstation 100 without the shelf 108. Here, a smaller shelf 138 having a mounting bracket 140 including a finger 142 is utilized. The smaller shelf 138 can be utilized if it is desired to support a computer monitor 18 or a flat screen monitor 22 at the same level as the desktop 106.

As mentioned above, because the T-slots 112 extend the entire length of the circular rail extrusion 104, all components mounted to the rail can be horizontally adjusted to suit the user's needs. For example, a computer monitor 18, a flat screen 22 and/or a console box 110 mounted to the rail 104 can be moved horizontally as indicated by the arrows 144 in FIGS. 15 and 16. Additionally, the legs 102 can be positioned along the rail 104 so that the ends of the rail extend beyond the legs for mounting such additional equipment as speakers 146 supported on speaker stands 148. As a result of the present invention, a totally adjustable and interchangeable workstation system is provided.

While there has been described what is presently believed to be the preferred embodiments of the aluminum, those skilled in the art will realize that various changes and modifications may be made to the invention without departing from the spirit of the invention and it is intended to claim all such changes and modifications as forward in the scope of the invention.

US 6,857,712 B1

9

10

What is claimed is:

1. A multi-media workstation comprising:

at least two vertical frames having an upper mounting surface thereon;

a first rail extrusion mounted to said mounting surface of said vertical frames and connecting said frames, said first rail extrusion including an upper surface, a lateral surface and a longitudinal slot formed in at least one of said upper and lateral surfaces;

a second rail extrusion having an upper surface and a longitudinal slot formed in said upper surface, said second rail extrusion being mounted to said mounting surface of said vertical frames and connecting said frames such that said upper surface of said second rail extrusion is disposed at a downward angle with respect to said upper surface of said first rail extrusion;

a desktop unit having a finger engaged in said longitudinal slot of said first rail extrusion, wherein said desktop unit is able to be horizontally translated along a length of said first rail extrusion; and

a console box for supporting a first piece of audiovisual equipment, said console box having a finger engaged in said longitudinal slot of said second rail extrusion, wherein said console box is able to be horizontally translated along a length of said second extrusion.

2. A multi-media workstation as defined in claim 1, further comprising a bracket assembly connected between said first and second rail extrusions.

3. A multi-media workstation as defined in claim 2, wherein said bracket assembly comprises a flat panel extending between said first and second rail extrusions and at least one bracket for supporting said flat panel.

4. A multi-media workstation as defined in claim 3, wherein said flat panel encloses a cavity between said first rail extrusion, said second rail extrusion and said vertical frames for containing electrical wiring for said workstation therein.

5. A multi-media workstation as defined in claim 4, wherein said flat panel includes at least one grommet opening for accessing said electrical wiring contained within said cavity.

6. A multi-media workstation as defined in claim 1, wherein said desktop unit comprises a work surface and at least two desktop brackets for supporting said work surface, said desktop brackets each including a finger engaged in said longitudinal slot of said first rail extrusion.

7. A multi-media workstation as defined in claim 1, wherein said longitudinal slots in said first and second rail extrusions are T-shaped.

8. A multi-media workstation as defined in claim 1, wherein said first rail extrusion includes a second longitudinal slot formed in one of said upper and lateral surfaces and wherein said workstation further comprises a support stand for supporting a second piece of workstation equipment, said support stand having a finger engaged in said second longitudinal slot of said first rail extrusion,

wherein said support stand is able to be horizontally translated along a length of said first rail extrusion.

9. A multi-media workstation comprising:

at least two vertical frames having an upper mounting surface thereon;

a rail extrusion mounted to said mounting surface of said vertical frames and connecting said frames, said rail extrusion including a first portion having an upper surface, a lateral surface and a longitudinal slot formed in at least one of said upper and lateral surfaces and a second portion having an upper surface and a longitudinal slot formed in said upper surface, said upper surface of said second portion being formed at a downward angle with respect to said upper surface of said first portion;

a desktop unit having a finger engaged in said longitudinal slot of said first portion of said rail extrusion, wherein said desktop unit is able to be horizontally translated along a length of said first portion of said rail extrusion; and

a console box for supporting a first piece of audiovisual equipment, said console box having a finger engaged in said longitudinal slot of said second portion of said rail extrusion, wherein said console box is able to be horizontally translated along a length of said second portion of said rail extrusion.

10. A multi-media workstation as defined in claim 9, wherein said rail extrusion further comprises a web portion connecting said first and second portions.

11. A multi-media workstation as defined in claim 10, wherein said web portion includes at least one longitudinal cavity formed therein for containing electrical wiring for said workstation.

12. A multi-media workstation as defined in claim 1, wherein said web portion includes at least one grommet opening for accessing said electrical wiring contained within said cavity.

13. A multi-media workstation as defined in claim 9, wherein said desktop unit comprises a work surface and at least two desktop brackets for supporting said work surface, said desktop brackets each including a finger engaged in said longitudinal slot of said first portion of said rail extrusion.

14. A multi-media workstation as defined in claim 9, wherein said longitudinal slots in said first and second portions of said rail extrusion are T-shaped.

15. A multi-media workstation as defined in claim 9, wherein said first portion of said rail extrusion includes a second longitudinal slot formed in one of said upper and lateral surfaces and wherein said workstation further comprises a support stand for supporting a second piece of workstation equipment, said support stand having a finger engaged in said second longitudinal slot of said first portion of said rail extrusion wherein said support stand is able to be horizontally translated along a length of said rail extrusion.

*  *  *  *  *

EXHIBIT C

# HOFFMANN & BARON, LLP

CHARLES R. HOFFMANN
RONALD J. BARON
DANIEL A. SCOLA, JR.*
A. THOMAS KAMMER
SALVATORE J. ABBRUZZESE*

ALAN M. SACK
IRVING N. FEIT
R. GLENN SCHROEDER
GLENN T. HENNEBERGER

ANTHONY E. BENNETT†

LUDOMIR A. BUDZYN†

GREGORY W. BACHMANN
STEVEN T. ZUSCHLAG
SUSAN A. SIPOS
KEVIN E. MCDERMOTT
RODERICK S.W. TURNER
ROBERT C. MORRISS
JOHN S. SOPKO*
JUSTIN K. HOLMES
CHRISTINA L. WARRICK*
ANNA-LISA GALLO

LAUREN T. EMR
JOY I. FARBER
JAMES F. HARRINGTON
VELLY B. POLYCARPE
STEPHEN CANNAVALE*
JAMIE M. LARMANN*
GORDON F. BELCHER
ANDREA M. WILKOVICH*
BETSY K. DOWD
JOHN X. HABERMAN

PATENT AGENTS
GLORIA K. SZAKIEL, Ph.D.
ROHINI K. GARG

EDNA I. GERGEL, Ph.D.
EDMUND GUTIERREZ, Ph.D

ATTORNEYS AT LAW
6900 JERICHO TURNPIKE
SYOSSET, NEW YORK 11791-4407
(516) 822-3550
FACSIMILE (516) 822-3582
www.hoffmannbaron.com

NEW JERSEY OFFICE
1055 PARSIPPANY BLVD.
PARSIPPANY, N.J. 07054
(973) 331-1700
FAX (973) 331-1717

SCIENTIFIC ADVISOR
DANIEL A. SCOLA, SR., Ph.D.

* NOT ADMITTED IN N.Y.
† SENIOR ATTORNEY

April 20, 2004

**<u>VIA FEDERAL EXPRESS</u>**

Mr. Jerry Hahn and
Mr. Frank LaPallo
TBC Consoles
115 Cabot Street
West Babylon, New York 11704

Re:    <u>Audio-Visual Workstations Having MASTERail™ System</u>

Dear Sirs:

As you are aware, our client, Forecast Consoles, Inc., is currently marketing innovative and inventive audio-visual modular workstations utilizing a rail system which allows for easy customization for any application.  These workstations are being marketed under the trademark MASTERail™.

Please be advised, that a patent application directed to these workstations has been filed and is being prosecuted to obtain United States patent protection.  We expect to complete this process in the near future and, once the patent issues, our client intends to enforce its patent rights against any and all infringers in the United States.  This effort will include pursuing a permanent injunction as well as any legally available monetary damages including lost profits, attorney's fees and aggravated damages.

Forecast Consoles, Inc. has advised us that you are currently marketing an audio-visual modular workstation, utilizing a rail system, under the name intelliTrac.  In particular, we have been advised that you are currently offering for sale at NAB 2004, in Las Vegas, Nevada, a workstation that essentially practices our client's invention.

We have also been advised that the development of your workstation appears to be the result of misappropriation of confidential Forecast Console trade secrets by a former employee of Forecast Consoles, Inc., thereby constituting unfair competition under the law.  If you persist in this activity, appropriate damages will be sought for your unlawful actions in this respect as well.

TBC Consoles
April 20, 2004
Page 2

Accordingly, we request that you respect Forecast Console's rights and avoid taking and/or continuing to take actions which may conflict therewith.  Specifically, we ask that you immediately stop offering for sale your intelliTrac workstation.

We look forward to your cooperation and prompt response in this matter.

Sincerely,

Charles R. Hoffmann

CRH:STZ:kd
188079_1

EXHIBIT D

C O N S O L E S

May 7, 2004

Mr. Charles R. Hoffmann
Hoffmann & Baron, LLP
6900 Jericho Turnpike
Syosset, NY 11791-4407

Re:  Reply to your letter of April 20, 2004

Dear Mr. Hoffman,

As you may be aware, the business of TBC Consoles is the design and manufacture of technical furniture used in supporting professional video production equipment and operations. Since 1988 we have continually improved our products (primarily audio-visual workstations) in response to the specific needs and interests of our clients and have made every effort to provide the best console solutions for this narrow focus market.

Our introduction at the 2004 NAB trade show of the *intelli*TRAC console system was part of this ongoing effort.  We have been developing this product for several years with a variety of manifestations.  It is an evolution of previous TBC original designs incorporating extensive use of t-slotted aluminum extrusion and removable turrets within a metal frame base structure. Numerous examples of *intelli*TRAC's formative elements may be seen in previous TBC original designs via brochure publications, trade magazine advertisements, TBC's website, and at our clients' facilities.

It is not clear what specifically your client's pending patent is attempting to restrict.  TBC has been *"marketing innovative and inventive audio-visual modular workstations ....allowing for easy customization for any application"* for many years.  The fact that your client calls his use of t-slotted aluminum extrusion a "rail" or a "MASTERail" while we have called ours a "BEAM" or a "monitor beam system", or a "TRAC" does not seem particularly relevant (or patentable). TBC, amongst many other designer/manufacturers of technical furniture (such as Evan's Consoles EXHIBIT A.1, A.2), have been using t-slotted aluminum extrusion (i.e. a "rail") and modular components for many years.

This information is being presented not only to demonstrate that TBC's *intelli*TRAC console system is based on an evolution of our own original designs, but also as a formal request of your firm to carefully review the data being presented here as a potential new basis for your patent prosecution efforts.  Forecast Console's use of t-slotted aluminum extrusion and easily customized console modules is not uniquely *"innovative and inventive"* within the general technical furniture industry or specifically as it relates to *"audio-visual modular workstations"*.

For example, in 1999 we designed and manufactured a modular component console system for the NBC Olympics in which the upper rack turrets were completely independent of the base cabinetry and could be easily customized for any application.  Please find attached a drawing of this original design (Exhibit B.1).  This is our console model PS-0 (Exhibit B.2) which has been a standard product in our line since that time.

In 2000, USA Networks approched us with the requirements of mounting numerous LCD monitors at the rear of our console on articulating arms.   After months of research and



TBC CONSOLES  •  115 Cabot Street  •  West Babylon  •  New York  •  11704
phone (631)293-4068  •  fax (631)293-4075  •  toll free (888)CONSOLE
email: jerry@tbcconsoles.com  •  web site: www.tbcconsoles.com



C   O   N   S   O   L   E   S

development we engineered an original t-slotted aluminum extrusion "monitor beam system" solution (Exhibit C.1). This has been used by us in numerous a-v workstation applications.

At NAB 2001 we introduced our TomCat console (model: M-TC.1af) which utilitzes extrusions both vertically and horizontally with the desktop supported by an adjustable height metal frame base (Exhibit D.1).

Since that time we have used aluminum extrusion extensively in a multitude of ways for a variety of audio-visual workstation applications. We have used extrusions to support Plasma displays, for console leg supports, at the rear of our consoles (as the "monitor beam system") and at the rear of our countertops to hold additional LCD monitors (Exhibits E.1, E.2 and E.3) and now in our *intelli*TRAC console system.

As stated, we see none of this as particularly patentable since t-slotted aluminum extrusion and modular console component solutions have been used extensively by TBC and other technical furniture manufacturers (i.e. Evan's) for many years.

Additionally, we have clearly demonstrated the use of these console solutions in many of our previous original designs and not via a *"misappropriation of confidential Forecast Console trade secrets by a former employee".* Since the MASTERail version of this type of console has been on their website, in trade magazine advertisements and at various trade shows, we question what, precisely, are the the *trade secrets* to which your letter refers?

If there still remains, in your, or your client's, opinion, clear infringement of a pending patent, please forward specific description of the precise details of same that we are to avoid and we will consider them very carefully. However, until convinced otherwise, we will continue designing and manufacturing the best possible console solutions for our narrow focus market. This includes ongoing development and marketing of TBC's *intelli*TRAC console system.

Sincerely,

Jerry Hahn
TBC CONSOLES, Inc.

Frank Lapallo
TBC CONSOLES, Inc.



TBC CONSOLES • 115 Cabot Street • West Babylon • New York • 11704
phone (631)293-4068 • fax (631)293-4075 • toll free (888)CONSOLE
email: jerry@tbcconsoles.com • web site: www.tbcconsoles.com



Exhibit **A.1**

UPPER TIER COMPONENTS

DESKTOP COMPONENTS

☐ *Desktop Rears*

☐ *Desktop Fronts*

BASE COMPONENTS



5

BLOWOUT VIEW - STANDARD AND OPTIONAL COMPONENTS



Tasklight

Blank panel

Phone shelf

Pencil tray

Height-adjustable
worksurface

Binder storage

Keyboard drawer

Door-mounted
processor shelf

Paper organizer

Fan

Under-counter
rackmount storage

Under-counter fixed or
slide-out processor shelf

Rackmount front

Monitor front

Upper end panel

Power bar

Lower end panel

Under-counter fixed
or slide-out processor shelf

Exhibit A.2

4

Exhibit **B.1**



Exhibit **B.1**





notes:

Exhibit **B.2**

CONSOLES
www.TBCconsoles.com

**PSO**

FRONT & REAR
RACK RAIL STD.

19 1/8 WIDE OPENING
FOR CABLE ENTRY/EXIT (TYP)

REAR ACCESS PANELS
OPTIONAL

LATERAL PASS-THRUS MAXIMIZED
FOR VENTILATION AND CABLING.
MULTIPLE OPENINGS DESIGNED FOR
SEPARATION OF POWER & DATA.
(typical for all production series modules)

HEAVY-DUTY, FORMED & WELDED
STEEL COUNTERTOP SUPPORT ARMS.

C-TOPS AVAILABLE WITH
VINYL BUMPER EDGE OR
SOLID WOOD NOSING.

46.5" (1181mm) AFF

CONTINOUS, RECESSED
TOE KICK

VENTED, REMOVABLE
ACCESS PANEL

26
22 5/16
18
22 1/2
9 1/2
21
22 1/2
48
8RU
3 3/4
4/9
20 1/2
27
28 3/4

**PSO**
**MODULAR SYSTEM**

*FOR PRODUCTION ROOMS:*
•MODULARITY
•FLEXIBILITY
•DURABILITY
•QUICK ASSEMBLY
•RECONFIGURABLE

TBC "Production Series"



USA NETWORKS NOC
**Multi-Channel Room**



Exhibit **C.1**



Exhibit **D.1**





Exhibit **E.1**





ADJUSTABLE

46.5" (1181mm) AFF

10"

28"

AUDIO BOX

17,280

3,790

50" O.A. CONSOLE

SECTIONAL ELEVATION

27"

24"

12 1/2"

11"

14 3/8"

21 7/8"

39"

Exhibit E.2

CONSOLES

115 CABOT ST  WEST BABYLON, NY  11704
PHONE: 516-293-4068  FAX: 516-293-4075

Client:
LOCKHEED
MARTIN
OVERSEAS

Project:

Drawing Title:
SECTION

LCD
CONSOLES

Design by:  TBC

Drawn by:  PJP

Date:  10 OCTOBER 01

Scale:  ****

Rack Rail Type:  ****

Plan Spec:  TBD

Plan Spec:  TBD

Special Notes:  TBD

CLIENT SIGNATURE APPROVES ALL
SPECIFICATIONS INDICATED IN
THIS DRAWING.

☑ DESIGN PROPOSAL DRAWINGS
☐ CONSTRUCTION DRAWINGS

Revisions:

DATE:

Filename:  L-1815A-01

Drawing No:
DP-302



Exhibit E.3