UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
                                  :

TBC CONSOLES, INC.,

                                  :

           Plaintiff,

                                  :

    - against -                    **MEMORANDUM AND ORDER**

                                  :

FORECAST CONSOLES, INC.,          05 Civ. 2756 (KMW)(KNF)

                                  :

           Defendant.

                                  :

----------------------------------------------------------X
                                  :

FORECAST CONSOLES, INC.,

                                  :

           Plaintiff,

                                  :

    - against -                    07 Civ. 3106 (KMW)(KNF)

                                  :

TBC CONSOLES, INC., TIME BASE
CORPORATION and JERRY HAHN,    :

           Defendants.           :

----------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

      Before the Court is the motion by plaintiff Forecast Consoles, Inc. ("Forecast"), for leave

to amend and/or supplement its complaint, pursuant to Rules 15(a) and (d) of the Federal Rules

of Civil Procedure, to include claims for infringement upon its: (i) patent; (ii) trademark; and

(iii) trade dress.  The defendant, TBC Consoles, Inc., consented to the proposed modification to

the complaint as it relates solely to the claim for relief sounding in patent infringement.  TBC

opposes the motion in all other respects.

**BACKGROUND**

Forecast commenced the action, bearing Docket No. 07 Civ. 3106, on April 18, 2007, alleging TBC Consoles, Inc., Time Base Corporation and Jerry Hahn (collectively, "TBC," or the "defendants"), infringed upon: (a) patents it owns in the United States, numbered 7,125,088 ("'088 Patent"), D473,078 ("'078 Patent"), and D495,902 ("'902 Patent"); and (b) trademarks and trade dress, related to its "MASTERail," "SOHO SS-NLE," "RAPTOR" and "Side Table" lines of media workstation products.  Forecast also asserted claims for unfair competition, trademark dilution, and deceptive trade practices, under federal and New York law, arising from the same alleged misconduct, described above, it attributes to the defendants.

The action, bearing Docket No. 07 Civ. 3106, was consolidated, pursuant to an Order, dated August 21, 2008, with a prior related action, filed by TBC on March 10, 2005 ("2005 action").  Through its 2005 action, TBC sought to have the plaintiff's patent, No. 6,857,712 ("'712 Patent"), declared invalid.  The parties consented to having proceedings in that litigation stayed,[1] due to Forecast's then-pending application for patent No. 7,406,803 ("'803 Patent") to be issued, which is a continuation application of the '088 Patent.[2]  The United States Patent and Trademark Office ("PTO") granted Forecast's '803 Patent application, on August 5, 2008.  The stay was lifted, on August 11, 2008, subsequent to the PTO's resolution of the '803 Patent

---

[1]The court stayed the proceedings, "[b]ecause . . . a stay will prevent duplicative federal proceedings, will promote judicial economy, will help focus the issues for litigation, and accepts the parties['] representation that a stay is in their best interests, . . ." (See Docket Entry No. 12, December 20, 2005).

[2]"A 'continuation' application claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed." Transco Prods. Inc. v. Performance Contracting, Inc., 38 F.3d 551, 555 (Fed. Cir. 1994) (citing MPEP § 201.07).

application.  In the interim, Forecast initiated the action, bearing Docket No. 07 Civ. 3106,

despite the stated reasoning of the court's stay order.

A Revised Scheduling Order, issued on September 22, 2008, established September 30,

2008, as the deadline for: (1) joining new parties; and (2) asserting additional claims.  The

plaintiff submitted a writing to the court, dated October 1, 2008, requesting a one-day

enlargement of the Revised Scheduling Order's September 30, 2008 deadline, in order to request

a pre-motion conference with the assigned district judge, preparatory to filing a motion for leave

to amend its complaint.  The plaintiff explained: (a) it failed to meet the September 30, 2008

deadline because its counsel's office was closed, in observance of a religious holiday; and (b) it

would have filed the motion, on September 29, 2008, had a pre-motion conference not been

required.  Moreover, Forecast revealed it intended to amend its complaint to add infringement

claims related to its: (i) '803 Patent; (ii) "Image Master" trademark; and (iii) "Image Master"

trade dress.  Forecast also sought to add claims for unfair competition, trademark dilution, and

deceptive trade practices, under federal and New York law, related to its "Image Master" media

workstation product(s).

In response to Forecast's writing, the assigned district judge adjusted the Revised

Scheduling Order, by enlarging, to October 2, 2008, the deadline for Forecast to make its motion

to amend and/or supplement its complaint, without the necessity of attending a pre-motion

conference.  The plaintiff made its motion to amend timely; its proposed amended complaint was

affixed to the motion, as an exhibit.

Forecast contends the permissive standard articulated in Fed. R. Civ. P. 15 militates in

favor of allowing it to modify the complaint by adding new claims for relief.  The plaintiff

-3-

contends further that its new claims are neither: (a) prejudicial to the defendants; (b) futile; nor (c) submitted in bad faith. Moreover, according to Forecast, it did not delay unduly in asserting the new claims, since the litigation between the parties was stayed for approximately two years; and, furthermore, the motion to amend was filed timely, pursuant to the court's Revised Scheduling Order.

For their part, the defendants contend Forecast's attempt to assert the trademark infringement and trade dress infringement claims now, through its proposed amended complaint, is: (1) prejudicial to them; and (2) barred by the doctrine of laches. The defendants maintain the new claims would prejudice them, inter alia, by increasing litigation costs, due to the need to: (a) identify and locate the original "Image Breaker" media workstation design team members and the relevant design documents for that product; (b) depose new witnesses; and (c) retain heretofore unanticipated expert witnesses to defend against the proposed claims.

In addition, the defendants maintain the Court would be warranted in denying the plaintiff's request, to add these claims to its complaint, based on the equitable doctrine of laches. According to TBC, six and one-half years elapsed since the alleged infringement of the "Image Master" mark and trade dress became known to Forecast. In support of this contention, the defendants point to an April 15, 2002 "cease and desist" letter Forecast sent to TBC, in which Forecast accused TBC of infringing Forecast's "Image Master" trademark and trade dress with TBC's "Image Breaker" media workstation product(s).

Forecast did not assert the "Image Master" trademark infringement and trade dress infringement claims as counter-claims in the 2005 action, despite filing its answer more than three years after dispatching the cease and desist letter. TBC maintains it increased its efforts to

market and develop the "Image Breaker" media workstation product(s), in response to the six and one-half years of silence from Forecast.  TBC supports its opposition to the motion to amend with a declaration by TBC's president, Jerry Hahn, which states, TBC "relied on the lack of any action by Forecast" to continue selling its "Image Breaker" media workstation.  Hahn asserts that TBC is "trying to expand the market by including the product on [its] website and reaching out to other potential customers."

The defendants also contend Forecast's reliance solely on Fed. R. Civ. P. 15's liberal standard for amending pleadings is misplaced.  The defendants maintain that, inasmuch as Forecast failed to meet the September 30, 2008 deadline for adding new claims, it must first satisfy the "good cause" standard found in Fed. R. Civ. P. 16(b) before invoking Fed. R. Civ. P. 15(a)'s standard.

**DISCUSSION**

A motion to amend a pleading is governed by Rule 15 of the Federal Rules of Civil Procedure.  Pursuant to Rule 15(a), a "court shall freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  While Rule 15(a) establishes a lenient amendment standard, the decision to permit an amendment to be made "rests in the discretion of the district court." Lincoln v. Potter, 418 F. Supp. 2d 443, 454 (S.D.N.Y. 2006).  A court may determine to deny a motion to amend due to: bad faith, undue delay or prejudice to the opposing party, dilatory motive, or futility of amendment.   See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

Moreover, if a party moves to amend its complaint after a deadline established by a court, for making such a motion, has elapsed, the party must first satisfy the requirements of Fed. R.

Civ. P. 16(b), that is, the party must show "good cause" before leave to amend may be granted. Fed. R. Civ. P. 16(b)(4); see also Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (citations and quotation marks omitted) ("Disregard of the [scheduling] order would undermine the court's ability to control its docket, disrupt the agreed-upon course of litigation, and reward the indolent and the cavalier") (brackets in original).  If "good cause" is established, a moving party must then demonstrate its proposed amendment is proper under Fed. R. Civ. P. 15(a).  Lincoln, 418 F. Supp. 2d at 453.

As noted above, on October 1, 2008, Forecast requested that the assigned district judge modify the Revised Scheduling Order, and extend the deadline, for adding new claims, by one day.  Forecast maintained it was unable to comply with the September 30, 2008 deadline, established by the Revised Scheduling Order, because the deadline coincided with a religious holiday.  Forecast's application was granted, and the following briefing schedule, for Forecast's motion to amend its complaint and assert additional claims, was fixed: (1) motion(s) due by October 2, 2008; (2) opposition(s) due by October 10, 2008; and (3) reply(ies) due by October 17, 2008.

Forecast satisfied the requirements of Rule 16; it established "good cause" for failing to meet the September 30, 2008 deadline and obtained judicial permission to move to amend its complaint.  Thereafter, Forecast filed its motion to amend timely.  Thus, the Court may exercise its discretion to grant Forecast's request to amend and/or supplement its pleading, by adding trademark infringement and trade dress infringement claims, unless the Court finds that bad faith, undue delay or prejudice to the opposing party, dilatory motive, or futility militate against doing so.  See Foman, 371 U.S. at 182, 83 S. Ct. at 230.

TBC contends the proposed amendments would prejudice it unduly, by increasing its litigation costs.  Moreover, TBC maintains that permitting the amendments to be made would be futile, as they are barred, inter alia, by the equitable doctrine of laches.

*Undue Prejudice*

In determining whether a party opposing an application to amend would be prejudiced by a newly asserted claim(s), a court may consider whether the proposed claim(s) would: (1) "require the opponent to expend significant additional resources to conduct discovery and prepare for trial"; (2) delay "the resolution of the dispute" significantly; or (3) prevent a party from bringing an action timely in another jurisdiction.  Block v. United States, 988 F.2d 344, 350 (2d Cir. 1993) (citations omitted).  As discussed earlier, TBC alleges that permitting Forecast to assert the new trademark infringement and trade dress infringement claims would prejudice it, inter alia, by increasing its litigation costs.  However, the resources that will have to be expended, due to the "burden of undertaking discovery" and other pretrial activities, "standing alone, [do] not suffice to warrant denial of a motion to amend a pleading."  United Brands Co. v. M.V. "Isla Plaza," 770 F. Supp. 220, 223 (S.D.N.Y. 1991) (citations omitted); see also Block, 988 F.2d at 351 (citations omitted) (finding the prejudice attributable solely to the time, effort and money expended in litigation does not equate to "substantial prejudice").

A motion to amend and/or supplement a pleading has been found to be prejudicial when the motion "is brought at a late stage of the litigation after discovery has been completed" or when the motion has been made "only in response to the defendants' motion for summary judgment."  NAS Elecs., Inc. v. Transtech Elecs. Pte Ltd., 262 F. Supp. 2d 134, 151 (S.D.N.Y. 2003).  Neither circumstance is present here, as Forecast proposed its amendment while

discovery was ongoing and neither party had made a summary judgment motion.  Accordingly, nothing in the record before the Court indicates TBC would be prejudiced by the proposed amendments.

*Laches*

"Laches is an equitable defense which bars injunctive relief where a plaintiff unreasonably delays in commencing an action."  Tri-Star Pictures, Inc. v. Leisure Time Prods., B.V., 17 F.3d 38, 44 (2d Cir. 1994).  TBC maintains that the proposed amendments would be futile, as they are barred by the equitable doctrine of laches.  In order to establish that laches bars the amendments, TBC must demonstrate Forecast: (1) had knowledge of the infringing activity it attributes to TBC; and (2) delayed in taking action, inexcusably.  In addition, TBC must show it would be prejudiced by the belated assertion, by Forecast, of its rights.  See Tri-Star, 17 F.3d at 44.

In trademark infringement litigation, when a party fails to assert its rights within the applicable statute(s) of limitation, based on the most analogous state-law cause(s) of action, a rebuttable presumption of laches exists.  See Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 191 (2d Cir. 1996); see also Harley-Davidson, Inc. v. O'Connell, 13 F. Supp. 2d 271, 279 (N.D.N.Y. 1998) (explaining doctrine of laches may be asserted to bar trademark-related claims); Deere & Co. v. MTD Holdings Inc., No. 00 Civ. 5936, 2004 WL 324890, at *18-21 (S.D.N.Y. Feb. 19, 2004) (barring proposed claims of trade dress infringement because plaintiff failed to rebut the presumption of laches adequately).  The Court finds that the most analogous New York cause of action is one for fraud.  Under New York law, a cause of action for fraud has a six-year

statute of limitation.  See id. at *18 (citations omitted) (noting that Lanham Act claims can be best analogized to causes of action sounding in fraud).

Forecast did not assert the proposed infringement claims until more than six years after it knew of the alleged infringing activity, as demonstrated by the April 14, 2002 cease and desist letter, the authenticity of which it has not challenged.  Therefore, the burden is on Forecast to show its proposed amendments are not futile by establishing that, in the circumstance of the case at bar, it would be inequitable to apply the doctrine of laches.  See Conopco, 95 F.3d at 191 (citations omitted).  TBC maintains Forecast has not met its burden since: (1) Forecast has not offered any justification for its failure to assert the claims at the time of the cease and desist letter, as counter-claims in the 2005 action or in its 2007 complaint; and (2) Forecast permitted TBC to rely on Forecast's lengthy inaction and to continue to market and develop its "Image Breaker" media workstation product(s).

Forecast maintains it did not assert these claims in its original complaint, because proceedings in the 2005 action were stayed.  However, proceedings were stayed, in that action, for approximately twenty months, based on the pending PTO resolution of the '803 Patent application, which related, solely, to Forecast's "MASTERail" multi-media workstation products.  The stay of proceedings did not prevent Forecast from initiating a parallel action, in 2007, alleging additional patent, trademark and trade dress infringement claims for other console products, including its "MASTERail" multi-media workstation.  As a result, the Court finds that Forecast has not provided sufficient justification for its delay -- from 2002 to the filing of the instant motion -- in asserting the trademark infringement and trade dress infringement claims at issue here.

TBC contends it would be prejudiced if forced, after such a prolonged delay, to terminate its "Image Breaker" media workstation marketing and development activities. However, in order to establish prejudice, TBC must demonstrate it "changed [its] position in a way that would not have occurred if the plaintiff had not delayed" in asserting the proposed claims. Conopco, 95 F.3d at 192. Jerry Hahn's declaration, opposing the plaintiff's motion, discusses a "planned" expansion of the "Image Breaker" market. Standing alone, an intended future change in business operations is insufficient to establish the requisite "changed-position" prejudice TBC must show it suffered by relying on Forecast's silence and delay. See Tri-Star Pictures, Inc. v. Unger, 14 F. Supp. 2d 339, 361 (S.D.N.Y. 1998). TBC is required to show it took affirmative steps to increase its reliance on the mark(s) during Forecast's delay. See id. at 361. This it has not done. Nevertheless, since TBC may avail itself of the presumption of laches that attends in the instant case, Forecast must establish that amending its complaint, to include the proposed claims, will not prejudice TBC. However, Forecast has failed to present any facts that establish TBC will not be prejudiced, if forced to abandon its "Image Breaker" business, based on Forecast's delayed assertion of the trademark infringement and trade dress infringement claims.

Instead, the plaintiff contends TBC may not rely on the equitable doctrine of laches because equity requires parties to act in good faith and to "come with clean hands." Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 107 (2d Cir. 2000) (citations omitted). According to Forecast, "a defendant who intended the unfair competition," like TBC, cannot satisfy that burden. Cuban Cigar Brands v. Upmann Int'l, Inc., 457 F. Supp. 1090, 1098 (S.D.N.Y. 1978) (citations omitted). However, Forecast has not provided facts to support its

allegations that TBC acted in bad faith, infringed upon Forecast's products willfully or sought to pass off its own products as those of Forecast.

Forecast maintains, alternatively, that, even if the equitable doctrine of laches were to bar a particular claim, a court may, nonetheless, grant injunctive relief if it determines "the likelihood of confusion is so great that it outweighs the effect of [the] plaintiff's delay in bringing suit." ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic and Sports Physical Therapy P.C., 314 F.3d 62, 68 (2d Cir. 2002). In order to overcome the defendants' reliance on the equitable doctrine of laches in asserting that the proposed amendments are futile, Forecast must establish that a likelihood of consumer confusion is inevitable, or demonstrate strong proof that the likelihood of consumer confusion exists. See Times Mirror Magazines, Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 395 (2d Cir. 2002). In Hermes, the assertion of laches was beaten back by a showing of consumer confusion, resulting from a counterfeiter plying the market with inexpensive copies of the true manufacturer's product. See Hermes, 219 F.3d at 107. The Hermes court determined the counterfeiter encouraged consumer confusion, actively, by informing its customers, explicitly, that no third-party observer could distinguish between the genuine and imitation Hermes handbags. Id. The court concluded such a practice harms the public interest by creating confusion not only within the relevant consumer population, but also among the general public, which may be duped into believing the imitation is actually the genuine item. See id. at 108-09.

The only evidence presented by Forecast to support its claim, that consumer confusion is inevitable, are the photographs of Forecast's "Image Master" media workstation and TBC's "Image Breaker" media workstation, annexed to its 2007 complaint. Moreover, at this point in

the proceedings, no factual finding of intentional infringement has been made that would support an assertion that TBC encouraged consumer confusion or engaged in other misconduct harmful to the public. Therefore, the Court cannot conclude, at this juncture, the likelihood of consumer confusion, if any, is so great that it outweighs the effect of Forecast's delay in applying to amend and/or supplement its pleading to assert trademark infringement and trade dress infringement claims.

Accordingly, the Court finds that the presumption of laches has not been rebutted. Forecast has failed to meet its burden of establishing circumstances exist that make it inequitable to bar the modification of its complaint, due to laches. As a result, the Court finds further that it would be futile to permit Forecast to amend its complaint to assert claims for infringement upon its trademark and trade dress.

## CONCLUSION

For the reasons set forth above, Forecast's motion to amend and/or supplement its complaint, Docket Entry No. 37, pursuant to Fed. R. Civ. P. 15, is granted to the extent that it may assert a claim for infringement of the '803 Patent and denied in all other respects.

Dated: New York, New York          SO ORDERED:
       July 27, 2009

_Kevin Nathaniel Fox_

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE